In re Stanley **RABZAK**, Debtor.

**Bankruptcy No. 82–04003 T.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 3, 1987.

---

Frederick L. Reigle, Reading, Pa., trustee.

Eugene Orlando, Herman, Orlando & Rearden, Reading, Pa., for trustee.

Alan M. Seltzer, Ryan, Russell & McConaghy, Reading, Pa., for Berks Indus. Warehousing, Inc.

Richard L. Orwig, Reading, Pa., for Joan Masler.

John Grenko, Reading, Pa., for John Grenko.

David G. Campbell, Reading, Pa., for Bank of Pennsylvania.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

We now render decision on the following matters in the case of Stanley A. Rabzak ("debtor"), a pro se chapter 7 debtor: (1) debtor's objection to the trustee's April 14, 1987 report of consummated sale; (2) debtor's motion for a more specific bill of particulars;[1] (3) debtor's objection to the proofs of claim filed by Bank of Pennsylvania, Berks Industrial Warehousing, Inc. (the moving company hired by the trustee to remove debtor's possessions from the property), Fidelity Bank, Hamilton Bank, and Joan Masler (debtor's ex-wife), and (4) trustee's objection to debtor's proof of claim. We also order the submission of

---

1. Since the bankruptcy rules identify no such pleading, and in light of debtor's pro se status, we will deem this a request for hearing on the trustee's report of consummated sale and also on the debtor's objection to the claim of Berks Industrial Warehousing, Inc.

additional information to allow review of debtor's objection to the proof of claim of John Grenko, Esq.

Our evaluation of these matters starts with the tortuous procedural and appellate history of this case, brief excerpts of which we describe below. On February 11, 1987, after a hearing in which debtor was allowed to present his objections, we entered an order allowing the trustee to sell debtor's interest[2] in certain real estate ("the property"). As a result of debtor's actions, we ordered on January 30, 1987 that the trustee and his agent be permitted access to the real estate to conduct necessary radon, water and septic testing. Debtor's refusal to cooperate led us to sign an order for possession on February 12, 1987. The debtor requested a stay pending appeal, which we denied. He then appealed the January 30th and February 12th orders. No appeals are now pending.[3]

The objections and motions listed above were heard on July 1, 1987. On September 16, 1987, debtor filed an "Emergency Motion to Admit Evidence in Conjunction with Debtor's Objection to Trustee's Claim" ("Emergency Motion"). Since the trustee did not personally file any claim, we have reviewed the content of the Emergency Motion. Debtor alleged that the trustee and his agents "... performed their duties in an improper, unworkmanlike quality." Thus, the Emergency Motion is really an additional objection to (1) the Berks Industrial Warehousing ("BIW") proof of claim, and (2) the debtor's objections to the trustee's report of sale. Accordingly, we will treat the Emergency Motion as supplemental arguments to both of these matters.

The Emergency Motion was heard on October 13, 1987, at which time the debtor presented the testimony of a friend who allegedly witnessed the BIW employees as they moved debtor's possessions from the property in March of 1987. Berks requested that we hear the testimony of their witness on this subject, and we scheduled the matter for hearing on October 28, 1987. Prior to that time, debtor filed a request for a continuance, which we denied by order dated October 26, 1987.

## I OBJECTIONS TO TRUSTEE'S REPORT

On April 13, 1987, the trustee filed a report of consummated sale, and the debtor filed an objection[4] to the report ("Objection to Report"). Debtor also filed a "Motion for More Specific Bill of Particulars," requesting a public accounting of the trustee's expenses. Since the bankruptcy code and rules identify no such pleading, and in light of debtor's pro se status, we will deem this a request for hearing on (1) the trustee's report of consummated sale, and (2) the debtor's objection to the claim of BIW. We also consider a document captioned "Objection to Claim," filed by the debtor on May 5, 1987 and docketed to *adversary* no. 86–1440.[5] This document requests that the debtor's ex-spouse not be given any proceeds from the sale of the property because (1) the trustee failed to consider adversary 86–1440; (2) no party responded[6] to debtor's motion to get his

---

**2.** The trustee was proceeding under 11 U.S.C. §§ 363(f), (h) which allows a trustee to sell property subject to the interest of a tenant in common or a tenant by the entireties. In this case, the owners were debtor and his non-debtor ex-spouse, Joan Masler.

**3.** Debtor has filed innumerable appeals, as reflected on the debtor's dockets in the United States District Court for the Eastern District of Pennsylvania (nos. 87–1135 and 87–1137), and the Third Circuit Court of Appeals (nos. 87–1139, 87–1140 and 86–1609). Debtor announced in Court on October 28, 1987, that all of his appeals have been dismissed. Our review leads us to agree.

**4.** This is captioned as an objection to the *report,* and not to the underlying sale. To the extent that debtor is simply attacking the validity of the underlying sale, we specifically deny this objection as moot. The sale has been properly consummated, and all timely objections have been heard.

**5.** The adversary, captioned Stanley A. Rabzak v. Joan E. Rabzak, Joan E. Masler, is styled a complaint for turnover of property. Numerous miscellaneous pleadings are docketed on this case, but we have not yet received a certificate showing service of the complaint.

**6.** To the contrary, the main docket reflects that a hearing was scheduled on this matter for

ex-spouse to appear for an examination. Whatever this document may be, it is not, as debtor captions it, an objection to a Proof of Claim. We will read it as a broad objection to the trustee's report of sale.

■ We deny debtor's objections to the report and request for a bill of particulars for the following reasons. The trustee has fully reported his sale related expenditures and receipts, and provided a copy of the settlement sheet. He has also certified that the sale and distributions were made in accordance with the notice of sale. Further, at the July 1, 1987 hearing, the trustee called as a witness the attorney who prepared the settlement sheet and attachments. That witness fully explained all notations and calculations under questioning from both the trustee's counsel and debtor. Debtor's objection focuses on the "adjustments" category of the settlement sheet. Debtor fully questioned the witness who testified that these were certain sale expenses with which debtor's non-debtor, ex-wife was not properly chargeable.[7] We agree with the trustee. 11 U.S.C. §§ 363(h), (f).

■ During the July 1, 1987 hearing, the debtor also objected that the property was not sold to the *first* party making an acceptable offer. We specifically deny this objection. The sale has been fully consummated and all appeals decided. Further, the trustee took acceptable steps when the first purchasers were unable to meet their mortgage contingency; he secured purchasers willing to pay the same price under virtually identical terms, Notes of Testimony, July 1, 1987 ("N.T."), and proceeded to send out an amended notice of sale. Despite his protestations, debtor presented no evidence that the price received by trustee was not the fair market value of the real estate. He objects that we did not authorize this sale, but neither the Code nor the

(local or national) Rules in effect at the time this sale was consummated require that the Judge approve such a sale in the absence of objections. Rules 6004(a), (d), 2002(a)(2), (c)(1) (cf. current Rule 6004, amended March 30, 1987, effective August 1, 1987). Finally, although debtor claims to have had an agreement of sale with another party, the July 1, 1987 testimony suggests that no such agreement existed because debtor's ex-spouse, a co-owner of the property, did not sign the agreement.

## II DEBTOR'S OBJECTIONS TO PROOFS OF CLAIM

■ We turn to the proofs of claim to which debtor objects. Properly filed proofs of claim are prima facie evidence of the validity and amount of the claim, absent any objection by a party in interest. 11 U.S.C. § 502(a) and Rule 3001(f). The burden of going forward is then on the objector, *In re Vic Snyder, Inc.*, 50 B.R. 631, 633 (E.D.Pa.1985), who must present evidence sufficient to rebut the prima facie case. *In re Harmon*, 72 B.R. 458, 461 (Bankr.E.D.Pa.1987); *In re Baker*, 49 B.R. 240 (E.D.Pa.1985). The objector must present "... evidence tending to defeat ..." the proof of claim, but the "... ultimate burden of persuasion ..." remains on the creditor filing the proof. *In re Joseph D. Stinger*, No. 87– 01332F, slip op. at 2 (E.D.Pa. July 22, 1987).

Linking many of these proofs of claim are debtor's objections to the timeliness of their filing. A few explanatory words clarify this issue. This case was filed as a chapter 13 on August 25, 1982. On October 14, 1986, we signed an order converting the case to chapter 7. The initial date set for the chapter 13 creditors' (11 U.S.C. § 341) meeting was January 30, 1983. Pursuant to former Bankruptcy Rule 302(e),

---

March 5, 1987, but that neither side appeared on the hearing date.

**7.** For example, the trustee presented testimony that certain items were to have been left in the home for the new owners, but were gone. Debtor lived in the home at the time that these items disappeared (his ex-wife offered uncontradicted

testimony that she last resided in the home on December 31, 1981). A rador testing company charged for a second trip necessitated by debtor's failure to cooperate to allow the testing. Under the circumstances, it would be improper to charge against the ex-wife's share of the proceeds this type of expense.

effective at that time, the deadline for filing proofs of claim was six (6) months after the date initially scheduled for the creditors' meeting. In this case, that deadline was July 20, 1983. An individual or entity that had properly filed a claim in the chapter 13 was not required to refile its proof after the case converted. *See* Rule 1019(4). (effective on October 14, 1986, the date on which this case was converted) Indeed, after the case was converted to chapter 7, the clerk's office sent out a notice dated December 19, 1986, informing creditors of the 341 meeting. This notice did not set another bar date because no assets existed above and beyond debtor's exemptions.

 Bank of Pennsylvania ("BPA") filed two proofs of claim on December 15, 1982: one in the amount of Two Thousand Five Hundred Twenty-Six and 59/100 ($2,526.59) Dollars ("claim 1") and the other in the amount of One Thousand Seven Hundred Seventy and 40/100 ($1,770.40) Dollars ("claim 2"). On April 9, 1984, debtor filed an objection to claim 2, but he later withdrew this objection. N.T., May 24, 1984, pp. 8, 10. On May 7, 1987, debtor again objected to claim 2, alleging that it was a marital debt. We find that debtor has previously withdrawn his objection to claim 2 and has provided us with no timely rationale for rehearing the matter. Further, the "cash plus" checking agreement underlying claim 2 provides for joint and several liability, defeating debtor's argument that this is a marital debt not chargeable in full to him. Accordingly, we deny debtor's objection and allow BPA's claim 2 in full. This leaves us with claim 1, and debtor admitted on July 1, 1987, that he had no objection to this particular proof of claim.

██ The BIW administrative claim in the amount of Seven Hundred Ninety-Eight ($798.00) Dollars was filed on April 16, 1987. Debtor objects that the claim is "... without substance, nature of any specificity." The proof of claim clearly indicates that it covers expenses incurred in "... moving Debtor's possessions out of Debtor's home." At the hearing, BIW presented the testimony of Scott Goetz, an owner of BIW, that the amount claimed represented the customary, reasonable charges in Berks County for such work. Debtor presented no rebuttal testimony and we find Mr. Goetz's testimony credible. On October 13th (during the hearing on the "emergency motion"), debtor introduced the testimony of Mr. Lawrence Hamilton, a self described "friend" of debtor, who testified that he witnessed BIW employees tossing debtor's possessions, helter-skelter, onto an adjacent piece of property. He testified that items were damaged.

BIW's rebuttal witness, Mr. Randall Sauppee, testified that he was the working foreman assigned to handle debtor's move. He stated that debtor worked *with* the BIW men in boxing *and* directing the placement of items. Mr. Sauppee noted that debtor *asked* his men to take pieces of scrap wood, empty jars, jars filled with oil and paint, and a door with previously broken window panes and place them on an adjacent piece of property. He admitted that things might have been broken in this move, but that no one deliberately destroyed debtor's property.

It is important to note that debtor took the stand upon completion of Mr. Sauppee's testimony and proceeded to describe to the Court a variety of issues of minimal relevancy. Despite this opportunity to present his own testimony, he never denied that he had asked the BIW movers to carry the woodshop items over to the next lot (a fact conveniently overlooked by debtor's witness, Mr. Hamilton).

Debtor's vehement protestations of damage are still unsubstantiated. He has provided no list of items allegedly destroyed by BIW, no list of the value of these items, and no eyewitnesses able to describe specific damage. Debtor offers no explanation as to why the active trustee would not protect all potential estate property. We find that BIW's witnesses have presented competent, credible testimony, uncontradicted by the responses elicited by debtor on cross examination. Debtor's witness was less credible, and we note that his testimony was so general and unspecific that it was of little assistance in evaluating

debtor's claim. We deny debtor's objection and allow the administrative claim of BIW in full.

Debtor objects that Fidelity Bank's ("FB") proof of claim was untimely, lacked merit and represented a marital debt. This proof of claim, in the amount of Five Thousand Sixty-Five and 15/100 ($5,065.15) Dollars, was filed on March 10, 1983, and is thus timely. *See* discussion, *supra* at 963. The underlying loan agreement provides for the joint and several liability of debtor and his non-debtor ex-spouse. Accordingly, we deny debtor's objection and allow FB's claim in full.

■ Hamilton Bank's ("HB") June 13, 1983, proof of claim in the amount of Seven Hundred Sixty-Four and 46/100 ($764.46) Dollars represents the unpaid balance on a charge card. Debtor objects that it was not timely filed and lacks merit. The claim was filed within the required time frame. *See* discussion, *supra* at p. 963. Debtor does not deny the basis of the debt. Accordingly, we deny debtor's objection and allow the claim in full.

On May 7, 1987, debtor filed an "objection" to the proof of claim of Joan Masler.[8] Masler did not file a proof of claim. Since the substance of debtor's oral argument is that Masler should not have received funds from the real property settlement, we will, again, take note of debtor's pro se status and treat this as an objection to the trustee's report of consummated sale. For the reasons noted earlier in this opinion, *supra* at pp. 962–963, we find the disbursements proper and deny debtor's objection.

■ Attorney John Grenko filed a proof of claim on January 10, 1983. We cannot determine the correct amount because (1) the amount listed at the bottom of the claim differs from the amount noted in paragraph 3 of the proof of claim, (2) the bill attached to the proof of claim lists a different amount, (3) the debtor's objection identifies yet another figure as the amount of the claim. The July 1, 1987 testimony,

further obfuscates the amount of the claim. During questioning, debtor referred to an agreement between the parties in which Grenko allegedly consented to accept a lesser sum as payment. (Neither party had the foresight to bring the agreement to the hearing.) Accordingly, we will order that the parties produce copies of the subject agreement.

## III TRUSTEE'S OBJECTION TO DEBTOR'S PROOF OF CLAIM

■ The trustee has objected to the debtor's November 26, 1986 proof of claim, which requests Twenty Five Thousand ($25,000.00) Dollars[9] based upon "Mechanics Lien filed November 19, 1986." Debtor did not file an answer to the objection.

We agree with the trustee that the debtor lacks standing to submit a proof of claim. The rules clearly contemplate that it will be creditors who file proofs of claim. *See e.g.*, Rules 3001, 3002. The only provision discussing filing by a debtor is Rule 3004, which allows a debtor to file on behalf of a creditor who has failed to file.

While we admire the vigor with which debtor pursues his vision of justice, his vision cannot vitiate the overriding scheme of the Code. It is obvious that this proof of claim is yet another chapter in a domestic relations drama being played out in state court. Debtor is vehemently opposed to his ex-wife receiving any money from the sale of the property. His testimony indicates that that concern was at the heart of (1) debtor's objection to the trustee's report of consummated sale, (2) debtor's objection to the non-existent proof of claim filed by his ex-wife, and (3) his own "proof of claim." The debtor is entitled to properly claimed exemptions. He is not entitled to use the proof of claim as a vehicle to obtain funds to which he is not otherwise entitled under the rules governing sales of jointly held property.

An appropriate order will follow.

---

8. This objection is docketed at adversary no. 86–1440.

9. The actual amount demanded in the proof of claim is Twenty Five Thousand and 01/100 (25,000.01) Dollars.