**In re MOTOR FREIGHT EXPRESS, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**MOTOR FREIGHT EXPRESS and First National Bank of Maryland, Defendants.**

**Bankruptcy No. 82–04944S.**
**Adv. No. 84–1537S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 6, 1988.

As Amended Oct. 21, 1988.

Appeal on Reconsideration Dismissed, Dec. 22, 1988.

Marc J. Sonnenfeld, Michael A. Bloom, Philadelphia, Pa., David Sperry, Louis Wade, Gen. Counsel, Kansas City, Mo., for Motor Freight Exp.

Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., Virginia Powel, Asst. U.S. Atty., Philadelphia, Pa., for the U.S.

Timothy E. McCormack, E. Stephen Derby, Baltimore, Md., for First Nat. Bank.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

Given the context in which the instant adversary proceeding was presented, we believe that it is, in substance, a request that we consider a previous order classifying a Proof of Claim of the Internal Revenue Service (hereinafter referred to as "IRS") as a seventh-priority claim, pursuant to 11 U.S.C. § 507(a)(7)(A). In light of the failure of the IRS to aver or present any evidence of, or even aver, any cause or equitable considerations to prompt us to reconsider our prior disposition, compounded by its failure to provide evidence on a necessary element of its case—i.e., that checks covering erroneous refund payments made by it to the Debtor were in fact cashed—we deny any relief to the IRS in this proceeding.

This adversary proceeding, filed November 29, 1984, sought to establish the rights of the IRS to certain erroneous refund checks issued by the IRS to the Debtor, MOTOR FREIGHT EXPRESS (hereinafter "MFX"), in late 1982 in the total sum of $242,227.70. MFX, a truck carrier, had unsuccessfully attempted to remain in business after the filing of the underlying large and long-pending Chapter 11 case on October 14, 1982. Named as Defendants in this proceeding were MFX and the FIRST NATIONAL BANK OF MARYLAND (hereinafter "FNB"), which had provided MFX with post-petition financing, pursuant to 11 U.S.C. § 364(c), and which had allegedly wrongfully received the check proceeds.

Shortly after the filing of this proceeding, on December 14, 1984, the IRS filed Proof of Claim No. 2456 in MFX's main bankruptcy case, in which it sought allowance of the $242,227.70 sum represented by the refund checks as an administrative claim, pursuant to 11 U.S.C. § 507(a)(1), due to the alleged "tortious conversion" of the check proceeds by MFX and FNB.

However, on April 22, 1985, our predecessor, the Honorable William A. King, Jr., approved a Stipulation by counsel for IRS, MFX, and FNB continuing trial of this proceeding "generally." As a result, nothing except leisurely-paced discovery transpired thereafter prior to the filing of an Objection to Proof of Claim No. 2456 by MFX in its main bankruptcy case on December 1, 1987.

On February 11, 1988, we conducted a hearing on, *inter alia*, MFX's Objection to Claim No. 2456. A former MFX officer, John Lawyer, and IRS revenue officer Philip Marcella, who apparently had knowledge of all of the events relevant to this proceeding, appeared and testified. However, none of their testimony at the hearing touched on the events described in this lawsuit.

After briefing, we issued an unpublished Memorandum and Order on May 11, 1988, in which we sustained MFX's Objection to Claim No. 2456 and classified same as a seventh-priority claim pursuant to 11 U.S.C. § 507(a)(7). In so doing, we held as follows:

The IRS has not met its burden of proving any exception to the general rule that these claims are entitled to no more than the seventh-priority status to which the refund related. The existence of [the instant proceeding], any mention of which is absent from this record, cannot be considered by us. *See In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir.1942); and *In re Nicolet, Inc.*, 80 B.R. 733, 742–44 (Bankr.E.D.Pa.1987). We also note that mere *allegations* in a long-neglected proceeding are entitled to little weight in themselves, even if the existence of this proceeding had been spread

out on the record. Thus, we shall grant the request of MFX to reclassify No. 2456 as entirely a seventh-priority claim. *See In re Lewis,* 80 B.R. 39, 41 (Bankr.E.D. Pa.1987) (claimant has ultimate burden of proving the merits of a claim to which objection is raised). The IRS apparently appealed our Order of May 11, 1988, to the District Court, but subsequently withdrew that appeal. As a result, that decision is final.

In a separate Order of May 11, 1988, entered at the time that we issued the Memorandum and Order mentioned heretofore, we scheduled a status conference in this proceeding on June 7, 1988, in order to dispose of it in some fashion promptly. That conference was followed by an Order of June 8, 1988, listing this matter for trial on August 9, 1988. After conducting the trial on the latter date, we issued an Order of August 10, 1988, according the IRS and the Defendants until September 2, 1988, and September 23, 1988, respectively, to submit Proposed Findings of Fact, Proposed Conclusions of Law, and Briefs. These submissions were timely.

Bankruptcy Rule (hereinafter "B.Rule") 7052, incorporating Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 52(a), mandates that we present our decision in the form of Findings of Fact and Conclusions of Law. As our decision is based upon, primarily, procedural grounds, flowing from the procedural history already outlined, we shall present a very brief statement of Findings of Fact, such as are relevant only to our disposition. Conclusions of Law are incorporated in the headnotes of a Discussion thereafter.

## B. FINDINGS OF FACT

1. On October 15, 1982 (one day after the Debtor's filing), and on November 10, 1982, this Court, per Judge King, entered Orders authorizing and approving extended post-petition financing, respectively, by MFX from FNB. In so doing, this Court granted the FNB a super-priority under 11 U.S.C. § 364(c) of the Bankruptcy Code to secure the indebtedness authorized therein.

2. On November 12, 1982, MFX ceased its normal business operations. Thereafter, on November 29, 1982, this Court entered an Order authorizing and approving extended post-petition financing by MFX from FNB to administer estate assets and close down its operations, also secured by a super-priority lien pursuant to 11 U.S. C. § 364(c) of the Bankruptcy Code.

3. On or about November 30, 1982, and December 14, 1982, due either to MFX's dispatching the wrong computerized deposit cards with its 1982 withholding tax remittances or to the IRS's misunderstanding that MFX's fiscal year was composed of three "quarters" of 12 weeks and one "quarter" of 16 weeks, or a combination of both reasons, the IRS erroneously sent three refund checks to MFX totaling $242,-227.70.

4. Believing these checks to be erroneously issued, employees of MFX wrote two letters to the IRS in late 1982 attempting to ascertain the reason for the issuance of the checks, which were never answered.

5. On December 14, 1983, about a year later, Howard J. Eichenbaum, Esq., an attorney for MFX, met with Mr. Marcella of the IRS for the purpose of attempting to reconcile differences between several proofs of claim filed by the IRS and the lesser amount believed to be due and owing by MFX according to its records. At this meeting, Mr. Marcella told Mr. Eichenbaum that the IRS may have made certain erroneous refunds to MFX. Thereafter, Mr. Eichenbaum contacted Mr. Lawyer of MFX, learned that MFX had received the three refund checks in issue, and had Mr. Lawyer endorse them on their reverse side to MFX's counsel as its "escrow agent."

6. Thereafter, Mr. Eichenbaum and Mr. Marcella continued negotiations concerning the disposition of these checks. Originally, Mr. Eichenbaum told Mr. Marcella that MFX intended to return the checks to the IRS, but first desired to obtain court approval before doing so. However, by late March, 1984, counsel for MFX concluded that the checks were property of the estate of MFX under § 541(a)(7) of the Bankruptcy Code, and that the checks should be

remitted by MFX to FNB instead of the IRS.

7. On April 2, 1984, Michael A. Bloom, Esq., an associate of Mr. Eichenbaum, called Mr. Marcella and informed him that he would be transmitting the checks to FNB. During this telephone call and an ensuing telephone call on April 3, 1984, Mr. Bloom suggested to Mr. Marcella that either the IRS stop payment on the checks or seek relief from this court if it objected to the checks being transmitted to FNB.

8. On April 2, 1984, Mr. Bloom sent the three refunds checks, endorsed by MFX to its counsel, to Mr. Kenneth B. Lukens, Vice President of FNB.

9. Mr. Lukens testified that FNB has no records of its receipt or disposition of the three refund checks, and that, in assessing its subsequent settlement of all matters between MFX and it, FNB was unable to determine whether the checks had been factored in to the settlement.

10. The IRS did not present any evidence, such as the cancelled checks, which established that in fact FNB or any other party had negotiated the checks and applied them to its account with MFX.

## C. CONCLUSIONS OF LAW/DISCUSSION

1. THE PROCEEDING, DESPITE ITS FORM, IS IN SUBSTANCE A REQUEST BY THE IRS TO RECONSIDER THE CLASSIFICATION OF CLAIM NO. 2456 PURSUANT TO OUR ORDER OF MAY 11, 1988.

█ During the course of the trial, MFX and FNB moved to amend their answers to implead the defense of *res judicata* arising from our Order of May 11, 1988, pursuant to B.Rule 9015 and F.R.Civ.P. 15(b).[1] In its post-trial submissions, the IRS responded that, irrespective of our disposition of the issue, we have the power to reconsider our

Order of May 11, 1988, by reason of B.Rule 3008, which provides simply as follows:

> A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

We agree with the IRS that B.Rule 3008 is relevant to the disposition here. However, we proceed to the next steps beyond the reasoning suggested by the IRS and point out that this proceeding, insofar as it relates to MFX, is merely the litigation of a claim. As we have indicated in the past, such litigation should not generally be maintained in the form of an adversary proceeding, but should properly be relegated to the claims process. *See In re Clark, Williams v. Clark,* 91 B.R. 324, 337–338 (Bankr.E.D.Pa. Sept. 21, 1988); *In re Stelweck,* 86 B.R. 833, 845 (Bankr.E. D.Pa.1988); *In re New York City Shoes, Inc.,* 84 B.R. 947, 960 (Bankr.E.D.Pa.1988); and *In re International Endoscope Manufacturers, Inc.,* 79 B.R. 620, 621 (Bankr.E. D.Pa.1987).

Since this adversary proceeding was presented to this court for disposition *after* our Order of May 11, 1988, which disposed of a Proof of Claim incorporating the substance of this adversary proceeding by reference, we conclude that this proceeding is, at least as to MFX, simply a proceeding in which the IRS seeks reconsideration of our disposition of Claim No. 2456.

2. THE IRS HAS FAILED TO ESTABLISH ANY "CAUSE" OR EQUITABLE REASONS JUSTIFYING OUR RECONSIDERATION OF OUR ORDER OF MAY 11, 1988, THEREBY REQUIRING A DECISION HEREIN AGAINST THE IRS.

We therefore conclude that this entire proceeding can be viewed as a motion seek-

---

1. The Answer of MFX also raised an issue of the liability of the Government for certain freight charges owed to MFX, an issue that was also raised in another separate proceeding in this case, Adversary No. 84–1416. The parties executed a Stipulation approved by us on September 20, 1988, allowing a claim to MFX in the amount of $129,429.04, but applying that sum to offset certain claims filed by Government agencies other than the IRS in the MFX bankruptcy case.

ing reconsideration of an order disallowing a claim against MFX's estate, arising under B.Rule 3008. The dispositive issues are, therefore, the standards under which parties are entitled to reconsideration of determinations of proofs of claim under B.Rule 3008, and whether those standards have been met by the IRS here.

B.Rule 3008 has a Code cognate in the first two sentences of 11 U.S.C. § 502(j), emphasized in the following quote of the complete text of this Code provision:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subjection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor (emphasis added).

The standards to be applied in determining "cause" and "the equities of the case," as set forth in the above Code Section, are not further spelled out in the Code or in the Rules. Obviously, however, there is a similarity between relief pursuant to 11 U.S.C. § 502(j) and B.Rule 3008 on one hand, and, on the other hand, relief pursuant to other rules pertinent to relief from judgments generally, *i.e.*, B.Rule 9023, which incorporates F.R.Civ.P. 59 "except as provided in Rule 3008;" and B.Rule 9024, which incorporates F.R.Civ.P. 60 "except ... for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest [which] is not subject to the one year limitation prescribed in Rule 60(b), ..." Compare *In re Dinh*, 90 B.R. 743, 745 (Bankr.E.D.Pa.1988) (F.R.Civ.P. 59 and 60 compared; Rule 59 found to be broader, allowing correction of "judicial errors").

■■■ We have previously held that the only practical effect of the added language in B.Rule 9023 quoted in the foregoing paragraph is the elimination of the 10–day period in which a party seeking reconsideration of a claim in the nature of Rule 59 may proceed. *In re Owens*, 67 B.R. 418, 422 (Bankr.E.D.Pa.1986), *aff'd*, 84 B.R. 361 (E.D.Pa.1988). Accord, *Karen–Richard Beauty Salon, Inc. v. Fontainebleau Hotel Corp.*, 36 B.R. 896, 897 (S.D.Fla.1983); *In re Resources Reclamation Corp. of America*, 34 B.R. 771, 773 (9th Cir. BAP 1983); and *In re Miles*, 39 B.R. 494, 497 (Bankr.W.D.N.Y.1984). We further hold that we have the power to correct "errors of law" in considering B.Rule 3008 motions. *Contra, In re Excello Press, Inc.*, 83 B.R. 539, 542 (Bankr.C.D.Ill.1988). We believe that B.Rule 9023 applies generally to motions to reconsider claims, and that the only effect of the language added in B.Rule 9023 is to eliminate the 10–day limitation period for serving such a motion included therein.

Further, it seems clear that, pursuant to B.Rule 9024, the presence of the considerations set forth in F.R.Civ.P. 60(b) would also constitute sufficient "cause" or "equities" to render it appropriate for a bankruptcy court to reconsider a decision allowing or disallowing a proof of claim. *See In re Colley*, 814 F.2d 1008, 1010–11 (5th Cir. 1987); *Karen–Richard, supra*, 36 B.R. at 898–900; *Resources Reclamation, supra*, 34 B.R. at 773–74; and 3 COLLIER ON BANKRUPTCY, ¶ 502.10, at 502–107 (15th ed. 1988). Only the one-year limit set forth in F.R.Civ.P. 60(b)(1), (b)(2), and (b)(3), as to claims allowed or disallowed "without contest" are exempt from the terms of F.R. Civ.P. 60(b), pursuant to the added language in B.Rule 9024.

■■■ We therefore conclude that the circumstances in which the application pursuant to B.Rule 3008 can be maintained

should be construed broadly, and include "cause" and "equities" which would be grounds for relief under either F.R.Civ.P. 59 or 60(b). However, B.Rule 3008 must be applied in light of the strong contrary policy of encouraging prompt, final dispositions of objections to proofs of claims. Therefore, some "cause" for reconsideration, invoking at least one of the grounds set forth in F.R.Civ.P. 59 or Rule 60(b), must be articulated if B.Rule 3008 is to be successfully invoked. *See Colley, supra* (reconsideration request denied because insufficient cause pursuant to Rule 60(b) was set forth); and *In re Rabzak,* 79 B.R. 960, 964 (Bankr.E.D.Pa.1987) (*pro se* debtor's reconsideration request denied because he provided "no timely rationale for rehearing the matter"). Mere neglect is clearly insufficient cause for reconsideration. *See In re Brielle Associates v. Graziano,* 685 F.2d 109, 110, 112 (3d Cir.1982) (law firm proceeding *pro se* not excused from contesting motion to reduce claim by failure to carefully review motion served upon it); *In re F/S Communications Corp.,* 59 B.R. 824, 827–28 (Bankr.N.D.Ga.1986) (failure to observe objection to claim among bulk of papers received in case not a justified "cause" for reconsideration of denial of claim); and *In re Uiterwyk Corp.,* 57 B.R. 166 (Bankr.M.D.Fla.1986) (counsel's failure to attend hearing regarding objection to claim because of distraction by another case is not requisite "excusable neglect" such as to justify consideration). On the other hand, defective service of an objection to a proof of claim may be a proper ground for allowing reconsideration of same. *See In re Green,* 89 B.R. 466, 469–70 (Bankr.E.D.Pa.1988).

The IRS, though invoking B.Rule 3008, fails to articulate any "cause" or peculiar "equities" which would prompt us to reconsider our pertinent Order of May 11, 1988, disallowing the sought-after status of its claim pursuant to 11 U.S.C. § 507(a)(1). There was no perceptible reason either alleged or in fact present to explain why the IRS did not attempt to establish the bases for the merits of its contention as to why its claim should be classified under § 507(a)(1) instead of § 507(a)(7) in response to MFX's objection to Claim No. 2456 at the hearing on February 11, 1988. Both Messrs. Lawyer and Marcella were present in court on that date and testimony relevant to all of the pertinent facts therefore apparently could have been adduced by the IRS at that time.

The only potential grounds within F.R. Civ.P. 60(b) which could justify the IRS's actions (or inactions) are 60(b)(1) ("mistake, inadvertence, ... excusable neglect") or 60(b)(6) ("any other reason justifying relief"). However, not even any of *these* grounds are supported with any of the requisite specific factual allegations. As the *Colley* court aptly states, B.Rule 3008 is not a license to "rehash ... original objections to the claims." 814 F.2d at 1011. It is important that claims be resolved as quickly as possible, in order that all creditors can promptly receive their due distribution.

■■■ We fail to find any bases under Rule 60(b) which would justify reconsideration of our decision of May 11, 1988, regarding the classification of the claim in issue. As the courts in *Breille Associates, F/S Communications,* and *Uiterwyk* make clear, errors of omission by counsel which are not justified by some allegations of extraordinary causation factors are not sufficient. Not even the inadequate justifications presented in those cases are made out here, and we can perceive no justifications ourselves. Furthermore, the IRS does not articulate any error of law made by us in our disposition on May 11, 1988, justifying reconsideration of that decision pursuant to Rule 59. These conclusions mandate a dismissal of the IRS's causes asserted against MFX in the proceeding before us here.[2]

---

2. While ultimately dismissing the entire Complaint on this basis, it should be noted that our decision is not a disposition on the merits as to the claim of the IRS against FNB. The dispute between these parties, when MFX is extracted from its center, is dismissed because it has no conceivable effect on the estate of MFX, is unrelated to the underlying Chapter 11 case, and is beyond our jurisdiction to resolve. *See In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985); and *In*

### 3. ALTERNATIVELY, THE ABSENCE OF PROOF THAT EITHER MFX OR FNB OBTAINED THE CHECK PROCEEDS WOULD BE FATAL TO ANY CLAIM OF THE IRS ON THE RECORD MADE HERE.

■ Our disposition on the basis of our decision that the IRS has not satisfied its necessary burdens to seek reconsideration of our previous determination as to Claim No. 2456 is a procedural disposition which would permit us to avoid any discussion of the underlying merits whatsoever. However, we should note that, despite being presented with a second opportunity to establish the classification of this claim pursuant to § 507(a)(1), the IRS has failed to support its contentions by any evidence that the disputed refund checks in issue were in fact ever paid, and hence that the funds which they represented ever found themselves into the pockets of MFX or FNB. If these checks were in fact never negotiated, the $242,227.70 sum for which they were drawn must still be in the United States Treasury. It is not implausible to conclude that such stale checks might never have been presented or were dishonored, and hence that their proceeds remain in the Treasury. Clearly, no claim for recovery of funds, or for tortious conversion, or to establish a constructive trust concerning these funds, the causes of action asserted by the IRS here in its Amended Complaint, could succeed if the IRS *retained* the funds in issue.[3]

We recognize that the IRS's ability to prove that the checks were negotiated is hampered by the passage of time. However, by allowing this case, in which it is plaintiff, to languish until this court *sua sponte* resuscitated it is not indicative of the vigor which we could expect the IRS to display in support of a claim for a quarter-million dollars which the IRS was firmly convinced had merit. After years of discovery and the experience of the previous hearing and decision against it due to its failure to meet its evidentiary burden of proof, we would certainly have expected the IRS to have proven its claim with all due thoroughness in this proceeding if it were capable of doing so. Its inability to so do reflects adversely on its ability to do so and hence the strength of its claim. It should have been apparent to the IRS that proof of negotiation of the checks in issue was an important element of its case. Production of conclusive evidence that the checks were paid would certainly appear to have been within the unique power of the IRS to produce. It was not forthcoming. Lack of proof on this point is fatal to the IRS's claims against either of the Defendants.

■ We express no opinion as to whether, even had cause been presented by the IRS for us to reconsider its prior Order and even had the IRS proven payment of the check proceeds to MFX or FNB, the IRS would have prevailed. Contrary to the IRS's contentions, the checks would appear to be property of MFX's estate, at least to the extent of MFX's equitable interest in them. *See In re Temp–Way Corp.*, 80 B.R. 699, 702 (Bankr.E.D.Pa.1987). However, this interest may have been even weaker than that of the debtor in *Temp–Way* as the co-drawee of a joint check, *id.* at 703–05, which we held had no interest in the check proceeds. Clearly, property stolen or improperly received by a debtor during a bankruptcy cannot be retained by a debtor on the ground that it is property of the estate. The advice that the checks should be remitted to FNB given by MFX's counsel, *see* Finding of Fact 6, page 708 *supra*, was therefore certainly subject to question. FNB's super-priority claim

---

*re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir.1984). For that reason, we dismiss the claim against FNB with that against MFX.

**3.** We are, however, not so convinced as to this point that we would be inclined to reconsider our Order of May 11, 1988, from the vantage point of MFX, and *sua sponte* strike the claim entirely. It does seem that FNB should have had the resources at its disposal to determine what happened to these checks. Its failure to do so may permit adverse inferences to be drawn as to it. However, this should not impact on our decision as to MFX, and we have already noted at page 711 *supra*, n. 2, that we do not consider this disposition to be on the merits as to FNB.

would not be conclusive as to its rights to the check proceeds if these proceeds were not such property of the estate of which MFX had a right of retention. There may be claims to property of the estate which rise to even a higher level than that of super-priority status. *Cf. In re American International Airways, Inc.,* 77 B.R. 490, 491–92 (Bankr.E.D.Pa.1987).

On the other hand, we have expressed our distaste for a creditor's contentions that it is required to receive favored treatment in distribution of estate assets due to the argument that certain funds of the debtor should be found to be held in trust by a claimant. *See, e.g., In re American International Airways, Inc.,* 83 B.R. 324, 329 (Bankr.E.D.Pa.1988), *aff'd,* C.A. No. 87–3529 (E.D.Pa. August 15, 1988); *In re Temp–Way Corp.,* 82 B.R. 747, 753 (Bankr. E.D.Pa.1988); and *In re Rimmer Corp.,* 80 B.R. 337, 338–39 (Bankr.E.D.Pa.1987). Fortunately, our disposition here allows us to avoid choosing between these conflicting policies, as we would have had to do in making a decision on the merits in the event that the IRS had proven that the refund checks had been cashed and the proceeds had been retained by either of the Defendants.

## D.   CONCLUSION

For the reasons stated herein, an Order of judgment in favor of the Defendants will be entered.