**In re Bryan Lee RANKIN, Individually and d/b/a Rankin Oil Company, Debtor.**

**Bankruptcy No. 87–70439–RBK.**

United States Bankruptcy Court, W.D. Texas, Midland–Odessa Division.

May 28, 1992.

Neal R. Allen, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, Tex., for Hydrogen Energy Corp.

Fay Cliett Gillham, Calame, Linebarger & Graham, Austin, Tex., for the Taxing Authorities.

## OPINION

RONALD B. KING, Bankruptcy Judge.

The question in this case is whether certain ad valorem tax claims should be reconsidered as to amount and class treatment under a Chapter 11 plan of reorganization. Finding that the claims are entitled to different treatment under the plan of reorganization than previously ordered, the motion to reconsider will be granted, in part.

Bryan Lee Rankin, d/b/a Rankin Oil Company ("Rankin"), filed a voluntary Chapter 11 bankruptcy case on November 2, 1987. The Second Modified Plan of Liquidation (the "Plan") was confirmed on October 18, 1989. The movants are eleven local ad valorem taxing authorities (the "Taxing Authorities"), who filed a motion to reconsider the eleven orders regarding their claims. The Taxing Authorities initially resisted their treatment under the Plan, which was filed by creditor and Plan proponent, Hydrogen Energy Corporation ("HEC"), by casting ballots on October 12, 1989, rejecting the Plan.[1] One day prior to the rejections, David W. Copeland, attorney for HEC, sent a letter by facsimile to counsel for the Taxing Authorities, Fay Gillham, proposing a "Modification to the Second Modified Plan of Liquidation" (the "Modification"), which purportedly would allay her concerns regarding the treatment of her clients' claims under the Plan.[2] In the letter, Mr. Copeland stated "[the Modification] I believe addresses your principal concerns and leaves the claims of your clients unimpaired." The Modification added language to the section of the Plan which dealt with the payment of Class 2 creditors, and provided, in relevant part:

A. Article 5, Treatment of Claims, shall be modified as follows:

1. Section 5.2, Class 2, shall be deleted and amended to read as follows:

5.2 Class 2. Class 2 is unimpaired. Holders of allowed Class 2 Claims will receive on account of such Claims deferred cash payments, over a period not exceeding six years (6) after the date of assessment of said of [sic] Claims, of a value, as of the Effective Date, equal to the allowed amount of Claims, pursuant to Section 1129(a)(9)(C), *together with per annum interest thereon at the statutory rate;* the first payment to be made one hundred twenty (120) days after the Effective Date, with subsequent payments made monthly thereafter. *All liens held by Class 2 Creditors shall remain in full force and effect until such time as the amount of each respective Claim has been paid in full. Any sale of all or any portion of the Property subsequent to Confirmation will be subject to any applicable lien of the respective Class 2 Creditor.*

*All taxes incurred by the Debtor subsequent to the Petition Date, together with penalties and interest thereon, shall be treated as Class 1 Claims under the Plan. No Tax Claims are included or includable in Class 7 under the Plan.*

(Emphasis added). The italicized language was added by the Modification. The intent of the Modification was apparently to satisfy specific concerns of Class 2 creditors by providing post-petition interest and a guaranty of lien retention. Sections 2.2 and 2.7 of the Plan described Class 2 as "[c]reditors holding allowed Tax Claims," and Class 7 as "[c]reditors holding statutory liens."

The final sentence of the Modification was particularly noteworthy. It appeared to state that "Tax Claims" were not included in Class 7 under the Plan. According to the Taxing Authorities' memorandum in support of their motion to reconsider, under the Plan, "[c]lass 7 receives a pro rata portion of a small amount of cash, and stock for the remainder of the claims." Because the Taxing Authorities' claims appear facially to be "Tax Claims," it would seem that they were not included in Class 7, based on the last sentence of the Modification. The Taxing Authorities contend that this additional language placed their claims in Class 2, and the representations contained within Mr. Copeland's letter induced them to withdraw their votes against the Plan. The Plan was confirmed on October 18, 1989, after an attorney for the Taxing Authorities withdrew their rejections.

On January 16, 1990, HEC, as successor to Rankin under the Plan, filed objections to claims of each of the Taxing Authorities

---

1. Taxing Authorities' Exhibit "1."

2. Taxing Authorities' Exhibit "2."

and other claimants. Responses were filed thereafter, but the parties sought and obtained a number of continuances, based ostensibly on settlement negotiations, which delayed the hearing until January 14, 1991. At that hearing, an agreed order was submitted concerning the claims of Andrews Independent School District ("AISD"), an entity not represented by counsel for the Taxing Authorities. The order as submitted by the attorneys for the Debtor and AISD provided for payment of AISD's claim over fourteen months.[3] With regard to the Taxing Authorities' claims, a hearing was again reset for February 13, 1991. After the February 13, 1991 hearing on each individual claim, HEC's counsel was responsible for submitting eleven orders reflecting the amount allowed by the Court on each claim. After being notified by the Clerk's office in June, 1991 that the orders had not been submitted, HEC's attorney submitted the orders in September, 1991. The orders were entered on September 19 and 20, 1991. Specifically, the orders provided the following disposition with respect to each claim:[4]

| Claim | Amount | Treatment |
|---|---|---|
| Andrews County | $19,855.61 | Class 7 |
| Buena Vista I.S.D. | 57.18 | Class 7 |
| Crane County | 16.98 | Class 7 |
| Crane County I.S.D. | 36.30 | Class 7 |
| Crane County Water District | .76 | Class 7 |
| Ector County | 558.12 | Class 7 |
| Kermit I.S.D. | 5,470.82 | Class 7 |
| Pecos–Barstow–Toyah I.S.D. | Disallowed | |
| Reeves County | Disallowed | |
| Winkler County | 1,892.47 | Class 7 |
| Wink–Loving I.S.D. | Disallowed | |

The orders provided that each allowed claim be accorded Class 7 treatment.

On September 30, 1991, the motion to reconsider was timely filed by the Taxing Authorities. At the hearing, counsel for the Taxing Authorities orally requested the following alterations to the Court's orders:

1. Treatment of the claims in Class 2, instead of Class 7;

2. Provision for post-petition, pre-confirmation interest;

3. Provision for post-confirmation interest; and

4. Recomputation and entry of new amounts attributable to the Taxing Authorities' claims.

## ISSUES

The motion to reconsider and the "Memorandum in Support" cite no statutes, rules or case law as authority. Without any guidance from the Taxing Authorities as to the legal basis for the requested relief, the issues appear to be as follows:

1. Whether the request for relief is allowable under the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure.

2. Whether claimants are entitled to relief if a plan which has been confirmed for more than two years treats their claims in an improper manner.

3. Whether HEC is estopped to assert a position contrary to previous representations made to the Taxing Authorities and the Court.

4. Whether a creditor can gain more favorable treatment than the other members of its class through an agreed order.

5. Whether the proper amounts were allowed to the Taxing Authorities based on the evidence at the hearing.

## DISCUSSION

I. Procedural Basis for Motion.

In the motion to reconsider, the Taxing Authorities request that they receive the same preferential payout given to AISD or, in the alternative, a change in their treatment under the Plan from Class 7 to Class 2. This Court has the power to reconsider the allowance or disallowance of the Taxing Authorities' claims "for cause" and may readjust the claims "according to the

3. Taxing Authorities' Exhibit "3."

4. HEC's Exhibit "3."

equities of the case." 11 U.S.C. § 502(j) (1988); Fed.R.Bankr.P. 3008.

### A. The "Cause" Requirement.

■ Bankruptcy Rule 9024 incorporates Rule 60 of the Federal Rules of Civil Procedure in all cases under the Bankruptcy Code.[5] The Fifth Circuit has interpreted Rule 9024 to provide that:

> [W]hen a proof of claim has in fact been litigated between parties to a bankruptcy proceeding, the litigants must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim.

In re Colley, 814 F.2d 1008, 1010 (5th Cir. 1987), cert. denied, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987). Thus, a party seeking reconsideration of a bankruptcy court's order regarding a claim should explicitly or implicitly assert one of the grounds delineated in Rule 60(b). In other words, pursuant to Bankruptcy Rule 9024, the presence of the grounds set forth in Rule 60(b) "constitute sufficient 'cause' or 'equities' to render it appropriate for a bankruptcy court to reconsider a decision allowing or disallowing a proof of claim." United States v. Motor Freight Express (In re Motor Freight Express), 91 B.R. 705, 710 (Bankr.E.D.Pa.1988); accord, In re International Yacht & Tennis, Inc., 922 F.2d 659, 662–663 (11th Cir.1991). Such grounds include mistake, inadvertence, fraud and misrepresentation. Fed. R.Civ.P. 60(b).

■ Although the Taxing Authorities' motion to reconsider does not cite any applicable Bankruptcy Rules, Rule 60(b), or even a general assertion of "cause" for reconsideration, it does implicitly allege *mistakes* in the orders (Taxing Authorities treated in Class 7 instead of Class 2) and *misrepresentations* made by the opposing counsel (letter from counsel assuring that Taxing Authorities' claims would be unimpaired and statements in court regarding Class 2 treatment). Thus, under the stan-

dard enunciated in *Colley*, the Taxing Authorities have alleged sufficient grounds to constitute "cause" for the purposes of section 502(j) and Rule 60(b).

### B. Scope of Court's Power to Adjust Reconsidered Claims.

■ Section 502(j) provides that a "reconsidered claim may be allowed or disallowed according to the equities of the case." The Advisory Committee Note to Bankruptcy Rule 3008 states that, upon reconsideration, "the court may allow or disallow the claim, increase or decrease the amount of a prior allowance, *accord the claim a priority different from that originally assigned it, or enter any other appropriate order.*" (Emphasis added.) Thus, this Court may change the treatment of the Taxing Authorities' claims if it finds sufficient "equities" to do so.

### II. Res Judicata Effect of "Improper" Confirmation Order.

In their memorandum in support of their motion to reconsider, the Taxing Authorities argue that their claims could not legally be placed in Class 7 because "[t]he court could not have confirmed a Plan which provided that the secured ad valorem tax creditors be forced to take a small amount of cash plus stock in the reorganized debtor in full satisfaction of their claims."[6] This argument ignores controlling authority to the contrary.

In *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987), the Court of Appeals for the Fifth Circuit considered the issue of the *res judicata* effect of a bankruptcy court's final and unappealed order of confirmation of a plan which, by its express terms, provided a party with rights which were beyond the statutory grant of the Code. Specifically, the plan in *Shoaf* provided for the release of a non-debtor guarantor from his guaranty of the debtor's promissory note. The holder of the note sued to enforce the guaranty on the ground that the Code does not affect the

---

**5.** 11 U.S.C. §§ 101–1330 (1988).

**6.** Taxing Authorities' Memorandum in Support at 5.

liability of any other entity for the debt of a bankruptcy debtor. 11 U.S.C. § 524(e). The court held that *res judicata* barred the creditor's suit where the creditor did not object to the release provision of the plan prior to confirmation, and did not appeal the confirmation order. The court noted:

> Regardless of whether that provision [of the plan] is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed.

. . . . .

> [A]ccordingly, Republic's cause of action for enforcement of the guaranty is barred by the bankruptcy court's order confirming the Plan.

815 F.2d at 1050 & 1054 (footnote omitted); *see also Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938).

■ In this case, the Taxing Authorities made no objection to the classification of their claims under the Plan prior to confirmation, and did not appeal the confirmation order. Thus, they are barred from now claiming that their classification under the Plan is inconsistent with the provisions of the Bankruptcy Code or outside the authority of the bankruptcy court.

This analysis, however, does not take into account the fact that the Plan did not list the Taxing Authorities' claims as being within any specific class. If the Taxing Authorities were led to believe that their claims were included in Class 2, there would have been no reason to object to the Plan because it would have complied with the Code mandated treatment of the Taxing Authorities' claims. Thus, it is necessary to analyze the preconfirmation intent and conduct of the parties.

III. Estoppel.

In their motion to reconsider, the Taxing Authorities assert that the attorney for HEC expressed his clear intent in the ballot summary filed with the Court and in the letter sent by facsimile that ad valorem tax claims were included within Class 2 of the Plan. Conversely, HEC argues that the

Taxing Authorities' claims were properly treated as Class 7 claims based upon the express language of the Plan. Specifically, HEC calls attention to section 3.2 of the Plan, as modified, which set forth the legal treatment of Class 2. The final sentence of that section stated: "No Tax Claims are included or includable in Class 7 under the Plan." HEC states that the term "Tax Claim" was a defined term under Article 1 of the Plan, which incorporated the definitions contained in the Second Modified Disclosure Statement. Section 1.28 of the Second Modified Disclosure Statement provided:

> 1.28 *Tax claim*—Any Claim of a governmental unit for taxes described in Section 507(a)(7).

Because section 507(a)(7) of the Code is limited to *unsecured* claims of governmental units, and the Taxing Authorities' claims were *secured*, HEC asserts that secured tax claims were not "Tax Claims" under the Plan. Thus, such claims were includable in Class 7 statutory lien claims because, although they were claims for taxes, they did not meet the Plan's definition of "Tax Claims." As such, HEC argues, the Taxing Authorities' claims belonged in Class 7.

A. *Representations by HEC's Counsel.*

In order to resolve this issue, it is necessary to analyze representations made by the attorney for HEC in open court or by filed pleading which might constitute grounds for estoppel.

On October 18, 1989, the confirmation hearing was held concerning the Plan. Significantly, HEC filed a Report of Balloting on the same date which provided, in relevant part:

> *Class 2*

> Class 2 consists of Tax Claims. Fourteen (14) Class 2 Creditors, having aggregate claims of $121,069.69, cast Ballots. The Plan was accepted by three (3) Class 2 Creditors having claims of $6,450.00, and rejected by eleven (11) Class 2 Creditors having claims of $114,619.69, representing 95% of the Class. Class 2 is

deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(c).

Coincidentally, the Taxing Authorities' ballots rejecting the Plan showed claims aggregating $114,619.69. Clearly, HEC's attorney placed the Taxing Authorities' claims in Class 2 at the time of the confirmation hearing.

As further evidence of the classification of the Taxing Authorities' claims, the tape transcript of the confirmation hearing reveals the following dialogue, in relevant part: [7]

DC: Mr. McInturff is in the courtroom today and he has advised me that his clients are all of those that filed rejections in class 2, and they will withdraw those rejections.

Ct: Withdraw them and do what? Vote in favor of the plan or just withdraw them?

DC: Okay, he [McInturff] does not have a ballot; I assume if I gave him ... Be that as it may, whether they're withdrawn or not, we would submit to the court that the plan satisfies the provisions of the bankruptcy code....

. . . . .

No objections were filed to the plan other than one by the State of Texas. We filed a modification to the plan, your honor, on October 12, I believe.

. . . . .

The only objection filed was that by the State of Texas; and I have with me a letter from a lawyer with the attorney general's office advising me that I have the authority to tell you that [the] objection will be withdrawn as the modification to the Plan that provides taxing authorities will keep their liens and be paid interest at the statutory rate, all of that complies with their concerns.

. . . . .

Ct: And what does this modification change?

DC: It only changes the treatment of *class 2; provides that those creditors,*

*which are taxing authorities,* would retain liens, would be paid at the statutory rate of interest, that their liens would remain intact if the property would have been ... any of the sale of property would be subject to those liens....

. . . . .

And then *class 2 is that of Mr. McInturff's clients and some other taxing authorities* who did vote for the plan; that class rejected the plan by 95%, but with Mr. McInturff's withdrawals of those ballots, then that class is deemed to have accepted the plan....

[Emphasis added]. The reference to "Mr. McInturff" was to Mr. Russell N. McInturff, an attorney with the law firm of Calame, Linebarger & Graham. Ms. Gillham was also employed by that firm, and she has represented the Taxing Authorities in most matters in this case. Mr. McInturff appeared on behalf of the Taxing Authorities at the confirmation hearing. As such, it is clear that Mr. McInturff's "clients," whom HEC's counsel mentioned as being in Class 2, were the Taxing Authorities. It is also clear that HEC's modification of the treatment of Class 2 claimants induced a confirmation-day withdrawal of both the rejections by the Taxing Authorities and the objection to the Plan by the Attorney General's office. Thus, HEC's counsel clearly represented to the Court that the Taxing Authorities' claims were in Class 2 at the time of confirmation.

B. *The Doctrine of Judicial Estoppel.*

▮ Judicial estoppel is a common law doctrine which prohibits a party who has assumed one position, whether by pleading or in open court, from later asserting an inconsistent position. *Brandon v. InterFirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). This equitable doctrine "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB,*

---

**7.** "DC" is David Copeland, attorney for HEC; "Ct" is the Court.

911 F.2d 1214, 1218 (6th Cir.1990). The doctrine is generally applied when a party attempts to contradict his own sworn statements made in prior litigation. *Brandon* at 268 (citing *USLIFE Corp. v. U.S. Life Ins. Co.*, 560 F.Supp. 1302, 1304–05 (N.D.Tex.1983)). It is not necessary that the prior statements be made under oath, however, because "the doctrine may be invoked [solely] to prevent a party from manipulating the court for self serving reasons." *Phillips v. FDIC (In re Phillips)*, 124 B.R. 712, 720 (Bankr.W.D.Tex.1991) (*citing Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980)).

■ Before the doctrine of judicial estoppel may be applied, the party to be estopped must have taken an affirmative position that was accepted by the court. *United States ex rel. American Bank v. C.I.T. Constr., Inc.*, 944 F.2d 253, 258–259 (5th Cir.1991) (citing *Moore v. United Serv. Automobile Ass'n*, 808 F.2d 1147, 1153 n. 6 (5th Cir.1987)); *Phillips* at 720. Without judicial acceptance of an inconsistent position, "application of the rule is unwarranted because no risk of inconsistent results exists. Thus, the integrity of the judicial process is unaffected." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982). The Fifth Circuit has approved the requirement of a judicial acceptance of a prior inconsistent position "as a method to safeguard the judicial process." *American Bank* at 258–259. This does not imply, however, that a judicial acceptance occurs *only* when the party against whom judicial estoppel is applied ultimately prevailed on the merits in a prior proceeding. "Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Teledyne* at 1218; *Phillips* at 720 (quoting *Edwards* at 599 n. 5).

■ In this case, the attorney for HEC clearly represented to the Taxing Authorities and this Court that the Taxing Authorities' claims were in Class 2 of the Plan through the filing of the Modification to Class 2 and accompanying letter, the Report of Balloting filed with the Court and through oral representations made at the confirmation hearing. This Court accepted HEC's representations and confirmed the Plan based on the fact that the Taxing Authorities (whose claims the Court was led to believe were in Class 2) withdrew their rejections, and the Attorney General's office withdrew its objection. HEC's prior representation to this Court that the Taxing Authorities' claims were in Class 2, and its later assertion that the claims were in Class 7, were fundamentally inconsistent, and the prior representations were relied upon by the Taxing Authorities and the Court. Accordingly, HEC should be judicially estopped to deny that the proper classification of the Taxing Authorities' claims was in Class 2.[8]

## IV. Favorable Treatment.

■ In their memorandum in support of their motion to reconsider, the Taxing Authorities note that Andrews Independent School District ("AISD") obtained more favorable treatment for its claims through an agreement made with HEC's attorney at the January 14, 1991 hearing. Specifically, this agreed order settled HEC's objections to AISD's claims, and provided for the agreed amount to be paid over fourteen months. The Taxing Authorities note that this payment term is better than the six-year payout provided to the Class 2 claims under the Plan. The Taxing Authorities assert that such an arrangement is "not fair to the other taxing authorities who are members in the same class," and that "[i]t is impossible to think that [HEC] should wish to discriminate so blatantly in favor of one member of the same class while simultaneously seeking to demean all other members of the same class and deprive them of their proper treatment under the Plan of Reorganization."

This argument is without merit. Ms. Gillham was present at the January 14,

---

8. In addition, if Class 2 consisted only of *unsecured* ad valorem tax claims, why did the Modification to the Plan state that "[a]ll liens held by Class 2 Creditors shall remain in full force and effect until ... paid in full"?

1991 hearing when HEC announced its agreement with AISD in open court. Ms. Gillham made no objections to this agreement. The AISD order was entered over seven months prior to the filing of the motion to reconsider. In addition, the motion to reconsider was targeted at only the eleven orders relating to the Taxing Authorities' claims, and did not request relief relating to the order allowing the AISD claim. The Taxing Authorities cannot now protest and ask the Court to confer upon them the same benefits AISD obtained through the diligence and negotiating skill of its counsel.

V. Proper Amounts Attributable to Claims.

■ At the February 13, 1991 hearing, the Court heard evidence relating to each of the Taxing Authorities' claims, and asked HEC's counsel to submit orders in conformity with the Court's ruling on each claim. The orders provided as follows:

| Claim | Amount |
| --- | --- |
| Andrews County | $19,855.61 |
| Buena Vista I.S.D. | 57.18 |
| Crane County | 16.98 |
| Crane County I.S.D. | 36.30 |
| Crane County Water District | .76 |
| Ector County | 558.12 |
| Kermit I.S.D. | 5,470.82 |
| Pecos–Barstow–Toyah I.S.D. | Disallowed |
| Reeves County | Disallowed |
| Winkler County | 1,892.47 |
| Wink–Loving I.S.D. | Disallowed |

At the November 13, 1991 hearing on the motion to reconsider, Ms. Gillham stated:

Finally, your Honor, I still have reservations that the amounts [in the orders] are correct and I cannot present any evidence to the Court that they're wrong. I have Mr. Kelton's notes which indicate some differences with those amounts. I've had some difficulty understanding those notes, and those would simply have to be looked at by some other person.

Later in the hearing, the following exchange occurred:

FG: And we've only received a copy of Mr. Floyd's calculations today. Mr. Kelton's calculations differ in the amounts and I'd like a chance to compare those two. That sounds to me like the sort of thing that can be worked out quickly between parties; it's just a matter of applying correct math and Mr. Kelton initially said that he thought there was some incorrect math done....

Ct: I think what I'm going to do is take this under advisement and if you want to submit your calculations to me of what you think is correct, you can do that; and you can do the same, Mr. Allen. We'll take your exhibits and we'll listen to the tapes, I'll have my law clerk listen to the tapes and I'll listen to the tapes and whatever the ruling was that day, that's what I'm going to do in the order. If there's a difference of opinion as to the calculation—arithmetic or percentages, or whatever—tell me what that is and I'll try to sort that out. But I'm not going to change my ruling....

This Court then asked the attorneys how much time they needed to submit exhibits or calculations. Ms. Gillham asked for two weeks, and this time period was agreed to by the attorney for HEC. According to HEC's response, that time period was later extended to December 3, 1991. On that date, HEC filed a detailed set of calculations. The Taxing Authorities did not submit any additional calculations or exhibits. HEC's calculations included a spreadsheet prepared by its witness, Wayne Floyd, which contained a corrected version of the calculations used in the eleven Orders entered previously by this Court. According to HEC, the new calculations were made by Wayne Floyd "after reviewing the tapes of the hearing." The corrected amounts were as follows:

| Taxing Authority | Corrected Amount |
| --- | --- |
| Andrews County | $16,173.89 |
| Buena Vista I.S.D. | 62.41 |
| Crane County | 18.99 |
| Crane County I.S.D. | 40.47 |
| Crane County Water District | .87 |
| Ector County | 306.24 |
| Kermit I.S.D. | 6,256.90 |
| Pecos–Barstow–Toyah I.S.D. | 0.00 |
| Reeves County | 0.00 |
| Winkler County | 5,858.45 |
| Wink–Loving I.S.D. | 0.00 |

The corrected amounts reflected, among other things, the inclusion of interest.

As stated in *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir.1988):

> Under Bankruptcy Rule [3001(f)], a party correctly filing a proof of claim is deemed to have established a *prima facie* case against the debtor's assets. *In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D.Mass.1983). The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail.... If, however, evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to "prove the validity of the claim by a preponderance of the evidence." The ultimate burden of proof always rests upon the claimant.... This burden does not shift even where the claimant is a state or federal tax authority.

The Taxing Authorities did not submit calculations or exhibits despite being afforded the opportunity to do so by this Court. Additionally, they presented no evidence at the hearing to substantiate their contention that the calculations were wrong. Thus, HEC's calculations were the only evidence before the Court and must be accepted because the Taxing Authorities failed to carry their burden of proof.

VI. Conclusion.

The Taxing Authorities' claims will be allowed as Class 2 claims in the corrected amounts submitted by HEC. Separate orders will be rendered for each claim. This Opinion constitutes the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rules 7052 and 9014.