AMERICAN BANK OF
RICHMOND, Respondent,

v.

MISSOURI FARMERS ASSOCIATION,
INC., Appellant,

Dale and Rose Rowan, Third
Party Respondents.

No. WD 36212.

Missouri Court of Appeals,
Western District.

July 23, 1985.

Joseph Albert Colussi, Kansas City, for appellant.

Roger Merrill Driskill, Richmond, for respondent American Bank.

Gary Richard Bradley, Lexington, for third party respondents Dale and Rose Rowan.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

KENNEDY, Judge.

This is an appeal from a summary judgment in favor of third-party defendants Dale and Rose Rowan against third-party plaintiff Missouri Farmers Association, Inc. ("MFA").[1]

We reverse.

The underlying case was American Bank of Richmond ("the Bank") against MFA. The theory of the Bank's case against MFA was the conversion by MFA of a quantity of soybeans sold by the Rowans to an elevator operated by MFA or by its subsidiary AG MO. The sale was alleged to have taken place between September and December, 1982. The proceeds of these beans, $22,126.76, were apparently paid to the Rowans. The Bank alleged in its petition that it had a lien on the beans and that MFA's purchase of the beans and its failure to account to the Bank for the proceeds was a conversion. The Bank's lien, it was alleged, was to secure the payment of a promissory note from the Rowans to the Bank for $50,000 upon which there remained a balance of $37,816, plus interest.

This lawsuit, it is significant to note, was filed July 27, 1983.

MFA filed its answer to the Bank's petition, denying the allegations thereof and setting up certain affirmative defenses. At the same time it filed its third-party petition against the Rowans. Supreme Court Rule 52.11(a). The relief sought by this third-party petition was that MFA, if the Bank should recover judgment against MFA on its conversion claim, have judgment over against the Rowans for the same amount. The theory of the petition was that the Rowans had falsely represented to MFA (by their silence when they had a duty to speak) that there were no liens on the beans, and that MFA had relied on such false representation to its detriment.

■ The ground for the summary judgment in favor of the Rowans and against MFA was a discharge in bankruptcy granted to the Rowans on July 12, 1983. (This was 15 days before the Bank's conversion suit was filed against MFA.) The bankruptcy petition had been filed in the United States Bankruptcy Court for the Western District of Missouri on or about April 21, 1983. The debtor's schedule filed in the case did not list any debt of MFA which might be related to the claim asserted in its third-party petition. Two unrelated debts to MFA were listed, one for $786.90 and one for $1,263.

We hold that the claim asserted by MFA in its third-party petition was not discharged by the order of discharge of July 12, 1983.

■ In order to be dischargeable, a debt must have arisen before the order of discharge in bankruptcy. 11 U.S.C. 727(b) (1982); *In re M. Frenville Co.*, 744 F.2d 332, 338 (1984); *Turner Broadcasting System, Inc. v. Sanyo Electric, Inc.*, 33 B.R. 996, 1000 (N.D.GA.1983); *In re Shenberg*, 433 F.Supp. 677, 680 (N.D.Ill.1977). The existence of a claim depends on when it arose. *In re Thomas*, 12 B.R. 432, 433

---

1. The Bank got judgment against MFA after a jury trial for $22,126.76. This judgment was appealed by MFA but the appeal has been dismissed. Information in the file indicates that the case was settled between those two parties.

(S.D.Ia.1981). Any claim which MFA has against the Rowans on its third-party petition did not arise until after the order of discharge, as we shall show presently.

The key to this case lies in 11 U.S.C.A. § 101 (1979 and Supp.1985), and the following definitions: "(4) '[C]laim' means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; ... (9) '[C]reditor' means—(A) entity that has a claim against a debtor that arose at the time of or before the order for relief concerning the debtor; ...."

Was MFA at any time before the discharge in bankruptcy a "creditor" of the Rowans? Did it at any time before the order of discharge have a "claim" against the bankrupts? Both questions must be answered in the negative.

When did the claim arise which MFA now asserts against the Rowans? At the earliest, MFA's claim against the Rowans did not arise until July 27, 1983, when the bank filed its conversion suit against MFA, and this was after the bankruptcy discharge of July 12, 1983.

A brief look at the nature of the MFA claim against the Rowans is in order. It is asserted as a third-party claim under Rule 52.11. In other words, MFA claimed that the Rowans were liable to it only if the bank was successful in its claim against MFA (a claim denied by MFA) for conversion of the 1982 beans. It is the nature of a third-party claim such as this that it is not allowable, as a procedural matter under Rule 52.11, if MFA had an independent claim against the Rowans which would stand on its own. It is allowable as a procedural matter only if MFA's claim is dependent upon the recovery against it by the first-party plaintiff. *AAA Excavating, Inc. v. Francis Construction, Inc.,* 678 S.W.2d 889 (Mo.App.1984); *State ex rel. Ashcroft,* 575 S.W.2d 924, 929 (Mo.App. 1978); *S.P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co.,* 525 S.W.2d 345 (Mo.App.

1975). MFA's third-party claim against the Rowans was of the latter character.

Rowan's alleged misrepresentation had occurred in 1982, before the bankruptcy, but MFA had suffered no damage from it until at least the Bank had filed its conversion suit. At the time of the bankruptcy, MFA had absolutely no claim against the Rowans. *Frenville,* 744 F.2d at 337.

It was a claim for indemnification. Claims for indemnification are held to arise when payment has been made under compulsion by the indemnitee, 42 C.J.S. *Indemnity* § 25 (1944); *State ex rel. General Elec. Co. v. Gaertner,* 666 S.W.2d 764, 766 (Mo.Banc 1984); *Terminal R. Ass'n. v. United States,* 182 F.2d 149, 151 (8th Cir. 1950). We do not hold, however, that there was no claim against the Rowans, which was dischargeable in bankruptcy, until MFA had paid the Bank's claim against it.

Claims for indemnification are similar to claims for contribution under our comparative fault decisions. There it is held that the third-party plaintiff's cause of action accrues, for statute of limitations purposes, at the time suit is filed by the plaintiff against the defendant and third-party plaintiff. *Gaertner,* 666 S.W.2d at 766; *Rowland v. Skaggs Companies,* 666 S.W.2d 770 (Mo. banc 1984). We hold that the claim, for purposes of its cognizance in the bankruptcy proceeding, arose at the same time, i.e., at the time the Bank filed suit against MFA.

A most instructive case is *In re M. Frenville Co.,* 744 F.2d 332. The case was dealing with the automatic stay provision of § 362(a) of the Bankruptcy Reform Act, but the underlying problem was when the "claim" in question arose. The case is applicable on that question, whether the ultimate question is automatic stay or discharge. It is tempting to quote long passages from the case, but we will confine ourselves to the following:

In the case at bar, A & B [corresponding to MFA in our case—ed.] had an

unmatured, unliquidated, disputed claim when the banks brought suit against it in New York state court. Until the banks [corresponding to the Bank in our case—ed.] instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the Frenvilles [corresponding to the Rowans in our case—ed.]. Since the banks' suit began some fourteen months after the filing of the Frenvilles' involuntary chapter 7 proceedings, A & B's claim, as well as its cause of action, arose post-petition. Although arguably A & B may have had some claim at the time the Frenvilles gave it allegedly false information, it did not have a claim for indemnification or contribution until the banks filed their suit. Thus, by its very terms, the automatic stay provision of § 362(a) is inapplicable to A & B's suit.

Frenville applied New York law as to when the claim arose (which is to be determined with reference to state law, *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946)), but Missouri's law is the same as New York's on this point. MFA's third-party claim did not arise until after the July 12, 1983, discharge.

Judgment reversed and cause remanded for further proceedings.

All concur.