**In re The HIGHLAND GROUP, INC., Debtor.**

**Bankruptcy No. B88–0768.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Jan. 14, 1992.

Edward R. Brown, Arter & Hadden, Cleveland, Ohio, for J.C. Penney.

Harry W. Greenfield, Buckley, King & Bluso, Cleveland, Ohio, for debtor.

MEMORANDUM OF OPINION
AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

### I.

The matter before the Court is an evidentiary hearing on the objection of The Highland Group, Inc. (Debtor) to a claim filed by J.C. Penney Company, Inc. (J.C. Penney). The Court has considered the pleadings, adduced testimony, admitted evidence, and the record, generally, to arrive at the following findings and conclusions:

### II.

Tim Beight purchased a trailer kit manufactured by the Debtor from J.C. Penney in the Fall of 1987. On May 28, 1988, while Beight was driving his stationwagon south on Interstate 77 in Virginia, with the trailer in tow, the trailer began a swaying motion, went out of control and turned over. Beight's wife, Jean, was killed in the accident. Subsequently, the administrator of Jean Beight's estate filed a wrongful death action against J.C. Penney and the Debtor. The decedent's estate administrator claimed that the trailer assembly was improperly designed, and that a bolt connecting the tongue to the assembly slipped through its hole causing the tongue to become disengaged from the assembly's cross bar.

Prior to the accident, on March 7, 1988, the Debtor filed its Chapter 11 petition. The decedent's estate administrator moved this Court for relief from stay to proceed against Highland which was granted on February 7, 1989. The stipulated order provided, *inter alia*, that any judgment would be enforceable up to the amount of available liability insurance coverage. The Debtor's product liability policy with Firemen's Fund (Firemen's) covering the accident had a One Million Dollar ($1,000,000.00) per year policy aggregate, with Nine Hundred Fifty–One Thousand Three Hundred Twenty–Six ($951,326.00) Dollars remaining for the year in question.

J.C. Penney, as the retailer of the trailer kit designed and manufactured by the Debtor, acquired the kit pursuant to a purchase order contract executed between the Debtor and J.C. Penney. The contract contained a provision respecting indemnification of J.C. Penney by the Debtor as set forth below:

5. Indemnification. (a) Seller will indemnify and hold harmless Penney and Penney's agents and employees from and against any and all loss, liability or damage, including counsel fees and costs of settlement, which shall arise out of or result from any of the following: (1) any injury to person or property arising or resulting from any actual or alleged defect in the merchandise or any act or omission of Seller or Seller's agents, employees or subcontractors with respect to the merchandise (even if Seller cannot be identified specifically as the Seller of the particular merchandise containing such defect, the Seller will indemnify Penney if the Seller can be identified by Penney as having been one of several sellers of similar merchandise). (2) The alleged existence by any third party of any state of facts concerning the merchandise which if true could constitute a breach of any representation, warranty or other obligation of seller under this Agreement. (b) In the event any action or proceeding based upon any of the matters referred to in subparagraph (a) above is brought

against Penney or its agents, Penney shall promptly notify Seller and Seller shall resist and defend such action or proceeding by reputable counsel retained by Seller's expense. (c) Seller agrees that any controversy between itself and Penney concerning its obligations under this paragraph 5 may be litigated in the same forum and concurrently with any lawsuit against Penney to which such controversy may relate, and Seller agrees voluntarily to appear in such forum and submit to the jurisdiction thereof.

The case proceeded to trial on May 15, 1990 and continued for eight (8) days before the jury deliberated. At the conclusion of the trial, but prior to the return of a jury verdict, the parties reached a settlement of the matter. Presently, J.C. Penney contends that it has a claim against the Debtor based upon a contractual agreement of indemnification. Further J.C. Penney avers that said claim arose postpetition and, therefore, it is an administrative claim under section 503(b)(1)(A) of the Bankruptcy Code. Contrarily, the Debtor contends that J.C. Penney does not have a claim against the Debtor under a theory of indemnification. The Debtor asserts that if this Court finds the claim is owed, it should not be afforded administrative priority.

### III.

The principal dispositive issue for the Court's determination is whether J.C. Penney has a claim, based upon indemnification, against the Debtor's estate. If so, should such claim be afforded an administrative priority.

### IV.

A person who, without personal fault, has become subject to tort liability for the wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability. *See, Ohio Casualty Insurance Co. v. Ford Motor Company*, 502 F.2d 138, 139–40 (6th Cir.1974); *Maryland Casualty Co. v. Frederick Co.*, 142 Ohio St. 605, 607, 53 N.E.2d 795 (1944).

This right of indemnity is based upon the principle that each person is responsible for his own negligence, and if another has been compelled by the judgment of a court to pay the damages which ought to have been paid by the wrongdoer such damages may be recovered. *Maryland Casualty Co., supra.* This rule also applies when the party vicariously or secondarily liable is compelled to settle a claim, after giving notice and an opportunity to defend to the party primarily liable. *Globe Indemnity v. Schmitt*, 142 Ohio St. 595, 604, 53 N.E.2d 790 (1944).

There is an essential difference, legally, between agreements of indemnity against loss and agreements to pay or stand for a debt. *Henderson–Achert Co. v. The John Shillito Co.*, 64 Ohio St. 236, 254, 60 N.E. 295 (1901). If an agreement is to simply indemnify, and nothing more, then damage must be shown before the indemnitee is entitled to recover. On the other hand, however, if there is an agreement to stand for a debt or to pay a sum certain, then it is no defense that the indemnitee has suffered no loss. *Henderson–Achert Co., supra; Wilson v. Stilwell*, 9 Ohio St. 467, 470 (1859). This distinction grows out of express terms of the agreement. A right of action accrues on agreements to pay or stand for a debt as soon as the debt matures and is unpaid, because the liability then becomes absolute and the failure to pay is a breach of the express terms of the agreement. *Henderson–Achert Co., supra.* No breach occurs and thus no right of action arises in agreements to indemnify until the indemnitee has suffered a loss against which the agreement covers. *Id.*

This Court must review the agreement between J.C. Penney and the Debtor to determine its actual character. The subject agreement is incorporated into a purchase order contract executed by both J.C. Penney and the Debtor. Therein, at paragraph 5 entitled "Indemnification," it provides that the Seller (Debtor), "will indemnify and hold harmless J.C. Penney and J.C. Penney's agents and employees from and against any and all loss, liability or

damage...". The agreement contains no language to suggest that it is one to stand for a debt or pay a sum certain. To the contrary, the agreement by its title and its express terms is one of indemnity. In fact, it is undisputed that the Debtor's insurer retained appropriate counsel to defend the wrongful death action. J.C. Penney suffered no demonstrable loss. The settlement check for which J.C. Penney bases its claim upon was tendered by Liberty Mutual on behalf of J.C. Penney. J.C. Penney has suffered no loss or damage as defined by the indemnity agreement. Therefore, it is clear that J.C. Penney does not have a claim against the Debtor based upon indemnification as J.C. Penney has demonstrated no loss to itself under the indemnification agreement.

J.C. Penney filed its proof of claim seeking an administrative priority on January 31, 1990, in an "unknown" dollar amount. The claim was signed by Attorney Diana M. Thimmig as agent for J.C. Penney. Designated by the claimant as being "contingent and unliquidated," it acknowledged that no judgment had been rendered on the claim and was not subject to any setoff or counterclaim. Subsequently, on August 2, 1990, another proof of claim seeking an administrative priority was filed. Purportedly, the latter claim, for $350,000.00, was a split claim between J.C. Penney and its insurer, Liberty Mutual Insurance Company. Of that claim, $250,000.00 plus interest was allocated by these joint claimants for J.C. Penney as distributor of the subject defective trailer. The remaining One Hundred Thousand Dollars ($100,000.00) was allocated to J.C. Penney's product liability insuror, Liberty Mutual Insurance Company, which stated that the policy included a $250,000.00 "retention feature". This second claim further indicated that Liberty Mutual had paid the entire settlement, with $250,000.00 to be charged back to J.C. Penney.

A review of relevant exhibits reveal that J.C. Penney agreed to dismiss its Cross–Claim against the Debtor. (Ex. 1–F; Exs. 11 and 14). J.C. Penney cross-claimed against the Debtor in the state court action but later filed a voluntary dismissal of that cross-claim. *Id.* When the parties to the state court action compromised that case, the settlement agreement provided, *inter alia,* that J.C. Penney would pay the Plaintiff $350,000.00, with the Debtor paying $650,326.00 immediately and $900,000.00 through a structured arrangement (Exs. 4 and 5). The obligation of J.C. Penney was paid by its insurer, Liberty Mutual. (*See,* Ex. 16). There was no evidence adduced or otherwise demonstrated which indicated that J.C. Penney had any obligation to its insuror Liberty Mutual, for any amount of the settlement.

The burden of proof is on J.C. Penney. It is interesting to note:

(1) Penney's joint claim with Liberty Mutual indicates that there will be a charge back to Penney in the amount of $250,000.00 for that portion of the $350,000.00 settlement paid by Liberty.

(2) No evidence was introduced by J.C. Penney, or any party, to demonstrate that a charge back provision existed between Penney and Liberty Mutual.

(3) The burden of proof was on Penney in this regard and Penney failed to meet its burden.

*See, Federated Mutual Insurance Co. v. Gray,* 475 F.Supp. 679 (E.D.Mo.1979). Having so found, this Court does not find it necessary to address the status of such a claim. To the extent a further addressment is deemed appropriate, however, such a claim, if allowed, would not be afforded an administrative expense priority.

 Section 503 of the Bankruptcy Code establishes criteria for the allowance of administrative expenses and sets forth:

§ 503. Allowance of administrative expenses.

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary cost and expenses of preserving the estate, including wages, salaries, or commissions for services rendered *after* the commencement of the case; ... (Em-

phasis added.) [11 U.S.C. § 503(b)(1)(A)]

The purpose of this provision of the Bankruptcy Code is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services. *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976). An expense is administrative in nature only if it arises out of a transaction between the creditor and the debtor's trustee or debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor's operation of the business. *In re Mammoth Mart, supra; Matter of Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984). Derived from § 64(a)(1) of the Bankruptcy Act, § 503(b) specifies the kinds of administrative expenses allowable in a case under the Bankruptcy Code. The determination of when administrative expenses are to be paid is within the discretion of the trial court. *In re Verco Indus.,* 9 B.C.D. 161, 20 B.R. 664 (9th Cir.BAP 1982). The allowable expenses receiving administrative priority under § 503(b)(1) are for services rendered to the debtor postpetition. Expenses typically allowed administrative expense priority under this section include compensation and reimbursement of expenses awarded to court-appointed officers of the estate; expenses other than professional compensation incurred by a creditor filing an involuntary petition; expenses incurred by a creditor who recovers property which is beneficial to the estate; expenses of a creditor who has acted in connection with a criminal prosecution related to the case; expenses of various types of creditors who have made a substantial contribution to a reorganization or municipal debt adjustment case, or by a superseded custodian. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. 355 (1977), 1978 U.S.Code Cong. & Admin.News 5787.

In *Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903), the U.S. Supreme Court accorded administrative expense status to a prepetition custodian or other party to the extent such services actually benefit the debtor's estate. At bar, the underlying incident which gave rise to Penney's indemnity claim conferred no benefit to the Debtor's estate postpetition. Although the subject accident and insurance award occurred postpetition, these matters are not the types of postpetition "services" envisioned to receive an administrative expense priority under § 503(b)(1). Tort claims that arise through accidents during the administration of an estate and which arise out of a trustee's scope of authority with regard to the estate's ongoing business, give rise to administrative expenses. *See, Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

Under the Bankruptcy Code, a "claim" is defined as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; [11 U.S.C. § 101(5).]

By this broadest possible definition, and by the use of the term throughout Title 11, especially in subchapter I of Chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court. H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6266. At bar, J.C. Penney never had a claim against the Debtor.

J.C. Penney contends that its claim arose postpetition because the accident and resulting injury occurred after the Debtor had filed its petition for relief. The majority of courts, however, have held that a right to payment arises at the time of the Debtor's prepetition misconduct as opposed to the manifestation of the injury itself.

See, e.g., *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198 (4th Cir.1988); *In re Johns–Manville Corp.*, 57 B.R. 680 (Bankr. S.D.N.Y.1986); *Matter of Baldwin–United Corp.*, 48 B.R. 901 (Bankr.S.D.Ohio 1985). The focus should be on the time when the act giving rise to the claim was performed, which in the present case occurred prepetition when the Debtor provided J.C. Penney with a defective trailer. Thusly, for federal bankruptcy purposes, a prepetition claim may encompass a cause of action that, under the state law, is not cognizable until after the petition is filed. *In re Johns–Manville Corp., supra.* This is so since there can be no state right of action on account of a claim, the existence of which depends on a future uncertain event. Since Congress has so provided in bankruptcy, contingent claims dependent upon a future event are prepetition claims if the underlying act creating the contingency occurred prepetition. *See*, 11 U.S.C. § 101(5).

J.C. Penney relies on an unreported opinion from this District, *White Motor Corporation v. Chambliss (In re White Motor Corporation)*, Civ. No. C84–402, 1984 WL 15645 (N.D.Ohio 1984), for the proposition that a claim arises at the time of the injury and not at the time of the wrongful or negligent act. That opinion has been duly considered but is not followed. *See, In re Edge*, 60 B.R. 690 (Bankr.M.D.Tenn.1986); *Matter of Baldwin–United Corp., supra; Grady v. A.H. Robins Co., Inc., supra;* and *In re Johns–Manville Corp., supra.* Where an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent prepetition claim. This is so even where the conduct giving rise to indemnification occurs postpetition. *See, In re THC Financial Corp.*, 686 F.2d 799 (9th Cir.1982); *In re Chateaugay Corp.*, 102 B.R. 335, 350–56 (Bankr.S.D.N.Y.1989); and *In re Grove*, 100 B.R. 417, 420 (Bankr.C.D.Ill.1989). Accordingly, J.C. Penney's claim would be a prepetition claim, if allowed, and therefore, it would not rise to an administrative expense status.

Even if this Court determined that the claim arose postpetition, it still would not rise to an administrative status. A debt is not entitled to an administrative priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate. *In re Amarex*, 853 F.2d 1526, 1530 (10th Cir. 1988). Instead, the Court has broad discretion to determine whether a claim for an administrative expense is, in actuality, an administrative expense. *In re Butcher*, 108 B.R. 634, 636 (Bankr.E.D.Tenn.1989). The burden of proof is upon the party seeking an administrative claim to prove its entitlement to such status. *See, Woods v. City National Bank & Trust Co.*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941). Here, that burden has not been met. J.C. Penney's claim to an administrative priority is premised upon the fact that the accident occurred postpetition. There is no addressment of the substantial benefit, if any, which inured to the Debtor's estate. Therefore, the claim would not be afforded administrative priority.

Accordingly, the Debtor's objection is sustained and the claim is hereby disallowed.

IT IS SO ORDERED.