**In re FOOD BARN STORES,
INC., Debtor.**

**Bankruptcy No. 93–40012–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

Dec. 15, 1994.

See also, 174 B.R. 1010.

724

Henry J. Kaim, Sheinfeld, Maley & Kay, Houston, TX, Laurence M. Frazen, Bryan Cave, Kansas City, MO, for debtor.

Jeffrey R. Lang, Kansas City, MO, for American Drug Stores.

S. Margie Venus, Akin, Gump, Hauer & Feld, Houston, TX, for Official Unsecured Creditors Committee.

Jacqueline Marcus, Weil, Gotshal & Manges, New York City, for Prudential Ins. Co.

### ORDER DENYING REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE FILED BY AMERICAN DRUG STORES, INC. AND DENYING MOTION FOR RECONSIDERATION OF DISALLOWANCE OF GENERAL UNSECURED CLAIM

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the request for payment of administrative expense filed by American Drug Stores, Inc. d/b/a Osco Drug Stores (American Drug) and the objection to the request filed by Food Barn Stores, Inc. (Food Barn). American Drug further moves the Court to reconsider the disallowance of its general unsecured claim as untimely filed.

### FACTS

At one time, American Drug leased space adjacent to a Food Barn store. Apparently, there was a problem with water leaking under the common wall from Food Barn's produce section into the Osco Drug Store. On December 27, 1988, Corine Randle, a customer in the Osco Drug Store, slipped and fell in water that allegedly had accumulated on the drug store's floor as a result of the water leak.

Food Barn filed its voluntary Chapter 11 bankruptcy petition on January 5, 1993. The Court ordered creditors to file proofs of claim by May 21, 1993. The Court established August 22, 1994, as the bar date for administrative expense claims.

On December 23, 1993, Randle filed suit against American Drug, Food Barn, and Safeway, Inc., Food Barn's lessor, in the Circuit Court of Jackson County, Missouri.[1] Randle sought damages in excess of $15,000. Randle's prior written demands were in excess of $100,000. Randle did not seek to lift the automatic stay prior to filing suit against Food Barn.

On December 24, 1993, American Drug settled with Randle for $18,000. Food Barn had not been served prior to the settlement, had no notice of the lawsuit, and was not a party to the settlement. American Drug's insurance company paid the settlement amount.

American Drug filed a proof of claim on March 17, 1994, in the amount of $18,000. American Drug described the basis for its general unsecured nonpriority claim as "indemnification."

On August 3, 1994, Food Barn filed a motion to deny late claims, which included the $18,000 claim for indemnification filed by American Drug. On August 23, 1994, Ameri-

---

1. In Missouri a five-year statute of limitations applies to personal injury actions. Mo.Ann.Stat. § 516.120(4) (Vernon 1952).

can Drug filed an objection to the denial of its claim as late contending its claim for indemnification arose post-petition and after the claims bar date when it actually paid the settlement amount on or about December 26, 1993. On August 23, 1994, American Drug also filed a request for payment of an administrative expense pursuant to 11 U.S.C. § 503 asserting that it was entitled to indemnification from Food Barn for the $18,000 paid post-petition to settle Randle's lawsuit.

At a hearing held August 24, 1994, the parties focused their arguments on the prepetition versus post-petition status of the March 17, 1994, proof of claim. The Court and the parties agreed that if the claim was prepetition, the proof of claim was filed late. American Drug stated that it had no problem with the Court denying the claim as a prepetition claim. Food Barn conceded that as a practical matter American Drug had complied with the bar date for administrative expense claims with the March 17, 1994, proof of claim, but objected to allowance of such a claim. The Court postponed resolution of the substantive issue of whether American Drug's claim was a valid post-petition administrative expense claim.

Food Barn filed its objection to American Drug's request for payment on October 13, 1994. Further arguments were held on the matter on October 20, 1994. Supplemental briefs were filed by the parties on November 4, 1994, and November 14, 1994.

In support of its request for payment of the $18,000 claim as an administrative expense, American Drug asserts that the claim did not arise prepetition because American Drug had no right of payment against Food Barn until it paid the settlement amount post-petition. American Drug argues that the basis of the claim is indemnification and that Missouri law is clear that a claim for indemnification arises when payment has been made under compulsion by the indemnitee, citing *American Bank of Richmond v. Missouri Farmers Ass'n, Inc.,* 695 S.W.2d 150 (Mo.App.1985). American Drug further relies on *In re M. Frenville Co., Inc.,* 744 F.2d 332 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), to support its proposition that this Court must look to the law of Missouri to determine when the indemnification claim arose for bankruptcy purposes. American Drug argues that because its claim for indemnification against Food Barn arose post-petition, the claim is entitled to treatment as an administrative expense pursuant to 11 U.S.C. § 503.

If the Court determines that the $18,000 indemnification claim arose prepetition, American Drug requests pursuant to Fed. R.Bankr.P. 3008 that the Court reconsider the disallowance of its general unsecured claim as untimely filed. American Drug advances two grounds upon which it asserts the Court may allow the proof of claim filed on March 17, 1994, as timely: (1) the timely filed administrative expense request relates back under Fed.R.Civ.P. 15 as incorporated by Fed.R.Bankr.P. 7015; or (2) excusable neglect under Fed.R.Bankr.P. 9006 applies.

In response, Food Barn contends that American Drug's claim must satisfy a two-part test before it can qualify as an administrative expense under 11 U.S.C. § 503. Food Barn asserts that American Drug must prove that the claim arose from a transaction that occurred post-petition and that the payment was beneficial to Food Barn in the operation of its business post-petition. Under the first prong of the test, Food Barn argues that the majority of case law supports its contention that American Drug's request is not based on a post-petition transaction, but rather is based on a prepetition claim. Food Barn notes that the *Frenville* opinion has been highly criticized and that virtually all courts which have considered the issue of when a claim arises agree that in spite of state law to the contrary, for purposes of bankruptcy an indemnification claim arises at the time of the conduct giving rise to the claim, which in this case would be when the underlying tort occurred prepetition.

Food Barn contends that American Drug has not satisfied the second prong of the test because it failed to provide any evidence demonstrating that payment of the $18,000 conferred a beneficial interest to Food Barn's bankruptcy estate. Food Barn argues there is no logical basis to assume that the pay-

ment in any way benefitted the bankruptcy estate.[2]

## DISCUSSION

Section 503 of the Bankruptcy Code provides in relevant part that:

(a) An entity may file a request for payment of an administrative expense.

(b) After notice and a hearing, there shall be allowed administrative expenses ... including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.

Administrative expenses allowed under section 503 have first priority in the distribution of the estate under 11 U.S.C. § 507(a)(1). "The policy underlying administrative expense priority is that 'the estate as a whole is benefited if general creditors subordinate their pre-bankruptcy claims in order to secure goods and services necessary to an orderly and economical administration of the estate after the petition is filed.'" *In re Christian Life Ctr.*, 821 F.2d 1370, 1373 (9th Cir.1987) (quoting *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465, 1470 (9th Cir.1983)). "[A]n administrative expense claim is a kind of priority granted 'to those who either help preserve and administer the estate or who assist with the rehabilitation of the debtor so that all creditors will benefit.'" *In re Tri–L Corp.*, 65 B.R. 774, 776 (Bankr. D.Utah 1986) (quoting *In re Coal–X Ltd. "76"*, 60 B.R. 907, 912 (Bankr.D.Utah 1986)).

"The costs and expenses of preserving an estate are not restricted to the categories specified in section 503 but include other necessary costs and expenses incurred in running a business during the pendency of a chapter 11 case." *In re Patch Graphics*, 58 B.R. 743, 745 (Bankr.W.D.Wis.1986). In *In re Hemingway Transp., Inc.*, 954 F.2d 1, 5

(1st Cir.1992), the First Circuit Court of Appeals opined:

As a general rule, a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor.

■ Both criteria must be met to mandate allowance of an administrative expense priority claim. *In re Zook*, 83 B.R. 447, 449 (Bankr.W.D.Mich.1988).

■ "Since an administrative expense constitutes a priority claim any recovery must be subject to strict scrutiny by the court. Priority statutes are strictly construed." *Patch Graphics*, 58 B.R. at 745. The party seeking an administrative expense claim has the burden to prove by a preponderance of the evidence that it is entitled to such claim. *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir.1992); *Patch Graphics*, 58 B.R. at 745.

"The terms 'actual' and 'necessary' contained in 11 U.S.C. § 503(b)(1)(A) must be narrowly construed in order to keep administrative expenses at a minimum and thus preserve the estate for the benefit of all creditors." *Patch Graphics*, 58 B.R. at 745. "[W]hile Chapter 11 proceedings benefit, insofar as possible, the debtors, it is crucial to bear in mind the 'overriding concern in the [Code] with keeping administrative expenses at a minimum so as to preserve as much of the estate as possible.'" *In re Baldwin– United Corp.*, 43 B.R. 443, 452 (S.D.Ohio 1984) (quoting *Otte v. United States*, 419 U.S. 43, 53, 95 S.Ct. 247, 254, 42 L.Ed.2d 212 (1974)).

Here, American Drug requests priority in distribution of the estate for an administra-

---

**2.** At the hearing held on October 20, 1994, Food Barn raised the question in passing that perhaps Randle's action was barred by the Missouri five-year statute of limitations at the time she filed her lawsuit and when American Drug agreed to settle. Randle slipped and fell on December 27, 1988. She filed her lawsuit on December 23, 1993. Randle's action was not time-barred. *See Nolan v. Kolar*, 629 S.W.2d 661, 664 (Mo.App. 1982); *White v. Teague*, 353 Mo. 247, 182 S.W.2d 288, 291 (1944); *Thompson v. Farmers' Exch. Bank*, 333 Mo. 437, 62 S.W.2d 803, 807 (1933); Mo.Ann.Stat. § 1.040 (Vernon 1969).

tive expense claim seeking indemnification for the payment its insurance carrier made to Randle in settlement of her lawsuit. It is a fundamental principle that " '[w]hat claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.' " *In re Evans,* 2 B.R. 85, 90 (Bankr.W.D.Mo.1979) (quoting *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)).

■ At common law, one who is compelled to pay damages resulting from the negligence of another has a cause of action for indemnity against the tort-feasor. *New Amsterdam Casualty Co. v. Boaz–Kiel Constr. Co.,* 115 F.2d 950, 951 (8th Cir.1940) (applying Missouri law); *Feinstein v. Edward Livingston & Sons, Inc.,* 457 S.W.2d 789, 792 (Mo.1970). In *State ex rel. Manchester Ins. and Indem. Co. v. Moss,* 522 S.W.2d 772, 774 (Mo.1975), the Supreme Court of Missouri sitting en banc stated that:

> Indemnity is a right which inures to a person who has discharged a duty which is owed by him, but which, as between himself and another, should have been discharged by the other, so that if the second does not reimburse the first, the second is unjustly enriched to the extent that his liability has been discharged.

In *American Bank of Richmond v. Missouri Farmers Ass'n, Inc.,* 695 S.W.2d 150, 152 (Mo.App.1985), the Missouri Court of Appeals opined that "[c]laims for indemnification are held to arise when payment has been made under compulsion by the indemnitee." The analysis of Missouri law does not end with *American Bank,* however. In this case, American Drug's insurance carrier settled the lawsuit with Randle. In *Stephenson v. First Missouri Corp.,* 861 S.W.2d 651, 657 (Mo.App.1993), the Missouri Court of Appeals reviewed a settlement agreement and subsequent claim for indemnification. Judge Hanna writing the opinion for the appellate court stated:

> Since compromise settlements are favored, we are reluctant to look behind such dispositions of litigated matters....

When we do review such settlements, we "look only so far as to detect a bona fide dispute of even colorable merit in order to uphold the resolution of differences reached by the parties themselves." ... Once a demand is made to assume the defense of the litigation and that demand is refused, the party requesting such indemnification is free to make a good faith settlement without having to demonstrate liability....

The record and exhibits support the trial court's ruling that Mid–Continent made a formal demand upon FMC to defend the adverse easement claims. FMC refused the demand and Mid–Continent settled the claims. Where a demand is made upon the indemnor who has actual knowledge of the underlying dispute, a good faith settlement is binding on the indemnor.... For the settlement to be binding upon FMC, the settlement must be made in good faith and the claim must have some foundation.

■ Under Missouri law, American Drug was required to make a demand upon Food Barn, who must have had actual knowledge of the underlying dispute, to defend the litigation and if Food Barn refused to defend the lawsuit, then American Drug was authorized to enter into a good faith settlement with Randle without having to demonstrate liability on the part of Food Barn. Here, American Drug made no such demand upon Food Barn. Food Barn had not yet been served and had no notice of the lawsuit when American Drug settled the action. Food Barn was not a party to the settlement. Food Barn's actual legal liability has not been established and the settlement is not binding on Food Barn. Because American Drug has no claim against Food Barn based upon indemnification under Missouri law, it has no claim against Food Barn in bankruptcy.

■ Also, although American Drug filed the proof of claim contending it was owed $18,000 from Food Barn, American Drug did not pay Randle—its insurance carrier did. American Drug has demonstrated no loss to itself and it does not have a claim against Food Barn. *See In re Highland Group, Inc.,*

136 B.R. 475, 479 (Bankr.N.D.Ohio 1992). There was no evidence that American Drug had any obligation to its insurer for any amount of the settlement. *See id.*

■ Further, even if the indemnification claim is valid under Missouri law, the Court concludes that the requested indemnification amount is based on a prepetition claim pursuant to bankruptcy law, which disqualifies the claim from priority distribution under 11 U.S.C. § 503 as an administrative expense. Even though valid creditor claims are to be determined according to state law, "[i]n determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits." *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 162, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946). Courts must administer and enforce the Bankruptcy Code as interpreted by the Supreme Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles. *Id.* "[T]he bankruptcy Code is superimposed upon the law of the State which has created the obligation.... Congress has the undoubted power ... to define and classify claims against the estate of a bankrupt." *Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198, 202 (4th Cir.1988).

Several courts have concluded that a claim in bankruptcy based upon indemnification is deemed to have arisen prepetition when the act giving rise to the claim was performed prepetition and, therefore, is not entitled to administrative expense priority. In *Highland Group* J.C. Penney contended that it had an administrative expense claim against the debtor based upon a contractual agreement of indemnification following the post-petition settlement of a product liability action. The bankruptcy court determined that the claim, if allowed, would not be entitled to administrative expense priority. In so ruling, the bankruptcy court opined:

Under the Bankruptcy Code, a "claim" is defined as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; [11 U.S.C. § 101(5).]

By this broadest possible definition, and by the use of the term throughout Title 11, especially in subchapter I of Chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court. H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6266....

J.C. Penney contends that its claim arose postpetition because the accident and resulting injury occurred after the Debtor had filed its petition for relief. The majority of courts, however, have held that a right to payment arises at the time of the Debtor's prepetition misconduct as opposed to the manifestation of the injury itself.... The focus should be on the time when the act giving rise to the claim was performed, which in the present case occurred prepetition when the Debtor provided J.C. Penney with a defective trailer. Thusly, for federal bankruptcy purposes, a prepetition claim may encompass a cause of action that, under the state law, is not cognizable until after the petition is filed.... This is so since there can be no state right of action on account of a claim, the existence of which depends on a future uncertain event. Since Congress has so provided in bankruptcy, contingent claims dependent upon a future event are prepetition claims if the underlying act creating the contingency occurred prepetition. *See,* 11 U.S.C. § 101(5).

.        .        .        .        .

Where an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent prepetition claim. This is so

even where the conduct giving rise to indemnification occurs postpetition.... Accordingly, J.C. Penney's claim would be a prepetition claim, if allowed, and therefore, it would not rise to an administrative expense status.

*Highland Group,* 136 B.R. at 480–81.

In *In re Amfesco Indus., Inc.,* 81 B.R. 777 (Bankr.E.D.N.Y.1988), directors and former directors of the Chapter 11 debtors requested that the debtors reimburse them as a priority administrative expense for expenses incurred in connection with post-petition threatened litigation grounded on the directors' prepetition conduct. The directors based their request on an indemnification provision in the Debtors' Restated Certificate of Incorporation and New York's Business Corporation Law. The bankruptcy court noted the general rule in New York that a cause of action for indemnity does not accrue until payment has been made by the party seeking indemnity, examined the definition of claim in the Bankruptcy Code and determined that the directors had a claim against the debtors, but ruled that the claim could not be afforded administrative expense priority. The bankruptcy court stated:

> The Applicants seem to imply that since their entitlement to indemnification from the Debtors first arose post-petition, and since they are rendering beneficial services to the Debtors post-petition, any "claim" for indemnification as provided for in the Restated Certificate of Incorporation or under applicable state law will not have matured until after the filing of the petition, thereby creating post-petition priority for their legal costs. This argument assumes that the date when an indemnification action first could have been brought fixes the date upon which a bankruptcy "claim" arose for the purpose of determining the priority status of their indemnification claim.
>
> ·    ·    ·    ·    ·
>
> While the cause of action ... may not have matured under state law until *after* the petition was filed, [the] claim for bankruptcy purposes arose *before* the petition [was] filed. This is so because a "right to payment" under the definition of "claim"

includes obligations which are neither matured, nor liquidated, nor fixed.... The application of state law to determine a "claim" for federal bankruptcy purposes undermines the bankruptcy policy of the debtor's "fresh start." If the cause of action under state law does not accrue prepetition, it need not necessarily follow that a claim for bankruptcy purposes does not accrue pre-petition as well.

> ·    ·    ·    ·    ·
>
> All of the operative facts, legal relationships, and conduct of the Applicants upon which is based the threatened litigation occurred pre-petition. The indemnification agreement entered into between the Applicants and Debtors occurred pre-petition. Any duty of the Debtors to indemnify the Applicants arises from services provided to the pre-petition Corporation not for services rendered post-petition to the Debtors–in–Possession. As such, the Applicants' legal fees claim arises from their pre-petition services rather than any post-petition services.
>
> ·    ·    ·    ·    ·
>
> [W]hile the Applicants may be entitled to indemnification by the Debtors, whether by statute or by contract or both, ... [any] unfairness to the Applicants is not sufficient to grant the claim administrative priority. Since the Applicants demand for administrative priority stems from pre-petition services rendered to the Corporation rather than post-petition services to the Debtors–in–Possession, the Applicants' claim for administrative priority must be denied.

*Id.* at 781–85.

The bankruptcy court in *In re Chateaugay Corp.,* 102 B.R. 335 (Bankr.S.D.N.Y.1989), likewise determined that indemnity loss claims asserted post-petition by a claimant were prepetition general unsecured claims that were not entitled to priority under section 503. The court opined:

> The fact that the Indemnity Loss claims remain contingent until the occurrence of a triggering or disqualifying event or termination of such agreements is not control-

ling. Once the contingency occurs, even if it occurs post-petition, "the contingent claim simply becomes a liquidated one; it, however, is not thereby elevated to the status of a post-petition claim." ... [I]ndemnity claims triggered post-petition are still pre-petition claims and are not entitled to administrative expense priority.... *Id.* at 352.

In *In re Yanks,* 49 B.R. 56 (Bankr.S.D.Fla. 1985), the bankruptcy court concluded that the indemnification claim of a fire insurance company against Chapter 11 debtors for proceeds paid to various mortgagees and lessors of a restaurant operated by the debtors and damaged by fire intentionally caused by the debtors was not entitled to administrative expense priority. The fire occurred prepetition, but the insurance company asserted that it was entitled to reimbursement of the payments to loss payees as an expense of administration because the payments were made post-petition and because its right of action against the debtors arose post-petition. The court rejected the insurance company's arguments determining that all of the operative acts and legal relationships occurred prior to the commencement of the case and the estate received no benefit from the payment to the loss payees. *Id.* at 59.

Here, the Court is persuaded by the foregoing cases that American Drug's claim for indemnification is a prepetition claim that is not entitled to priority as an administrative expense. Randle's slip-and-fall occurred prepetition. American Drug's right to indemnification from Food Barn was contingent upon payment to Randle. *See In re Dill,* 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd* 731 F.2d 629 (9th Cir.1984). Although the indemnification claim was contingent, it arose prepetition for bankruptcy purposes. "In the case of a claim [as defined by 11 U.S.C. § 101(5)] ... Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in bankruptcy. The Code contemplates the broadest possible relief in the bankruptcy court." *Grady,* 839 F.2d at 202. "The definition of 'claim' in the Bankruptcy Code is intentionally broad and sweeps within its scope remote and contingent obligations not

necessarily actionable under state law at the commencement of a bankruptcy case." *In re Piper Aircraft Corp.,* 162 B.R. 619, 629 (Bankr.S.D.Fla.1994), *aff'd* 168 B.R. 434 (S.D.Fla.1994).

American Drug relies on *In re M. Frenville Co., Inc.,* 744 F.2d 332 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), in support of its contention that its indemnification claim arose postpetition for bankruptcy purposes and, therefore, is entitled to administrative expense priority. In *Frenville,* the Third Circuit Court of Appeals held that the automatic stay of 11 U.S.C. § 362 was inapplicable to a third-party action for indemnification or contribution accruing post-petition but arising out of acts that occurred prepetition. The creditors of a Chapter 7 corporate debtor sued the debtor's auditor for damages which the creditors contended occurred as a result of relying upon allegedly false financial statements prepared prepetition by the auditor. The auditor sought relief from the automatic stay to join the debtor as a third party defendant to obtain indemnification or contribution. The Court of Appeals looked to New York law to determine when the auditor's claim arose. *Id.* at 337. In New York a claim for contribution or indemnification accrues at the time of the payment of the judgment flowing from the underlying act, but a defendant in an action is permitted to institute a third-party claim against a party for indemnification. *Id.* The court determined that the auditor had no cause of action based on indemnity or contribution until sued by the creditors post-petition and concluded that the automatic stay was inapplicable reasoning that the auditor's indemnification or contribution claim did not constitute a claim or a right to payment which arose prior to the commencement of the bankruptcy case. *Id.*

The *Frenville* decision has been criticized or rejected by many courts. *See, e.g., Grady,* 839 F.2d at 200–02; *Piper Aircraft,* 162 B.R. at 624; *In re Transportation Sys. Int'l, Inc.,* 110 B.R. 888, 894 (D.Minn.1990), *aff'd Lovett v. Honeywell, Inc.,* 930 F.2d 625 (8th Cir. 1991); *In re Wisconsin Barge Lines, Inc.,* 91 B.R. 65, 68 (Bankr.E.D.Mo.1988); *Amfesco,*

81 B.R. at 782–83; *In re A.H. Robins Co., Inc.,* 63 B.R. 986, 992 (Bankr.E.D.Va.1986), *aff'd Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198 (4th Cir.1988); *In re Johns–Manville Corp.,* 57 B.R. 680, 690 (Bankr.S.D.N.Y. 1986); *Yanks,* 49 B.R. at 57–59; *In re Baldwin–United Corp.,* 48 B.R. 901, 904 (Bankr. S.D.Ohio 1985).

This Court declines to follow *Frenville* and agrees that to "follow *Frenville* and apply state law would be to confuse a 'right to payment' for federal bankruptcy purposes with the accrual of a cause of action for state law purposes." *A.H. Robins Co.,* 63 B.R. at 992. Clearly, section 101(5)(A) provides for a right to payment whether or not such right is contingent. "Defining the right to payment under § 101(5) by tying it to state law is inappropriate." *Piper Aircraft,* 162 B.R. at 624. For like reasons, the Court rejects the implication in *In re Reading Co.,* 404 F.Supp. 1249 (E.D.Pa.1975), that a claim for indemnification based upon prepetition acts arises post-petition.

The Court concludes that American Drug's prepetition claim cannot be accorded priority as an administrative expense.

■ In any event, even if the Court determined that the claim arose post-petition, it still would not rise to administrative expense status. "A debt is not entitled to an administrative priority simply because the right to payment arises after the debtor-in-possession has begun managing the estate." *Highland Group,* 136 B.R. at 481. Here, American Drug has failed to establish that the payment to Randle was beneficial to the estate. The burden was on American Drug to prove the estate received a benefit by the settlement payment, it is not the burden of the Court to engage in speculation.

Food Barn's objection to American Drug's request for payment is sustained and the request for payment of an administrative expense is denied.

■ In the alternative, American Drug has moved the Court pursuant to Fed. R.Bankr.P. 3008 for reconsideration of the disallowance of its general unsecured claim as untimely filed. Rule 3008 states in relevant part that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." The determination of whether or not to reconsider an order allowing or disallowing a claim falls upon the equitable judgment of the court and is within the sound discretion of the court. *In re Flagstaff Foodservice Corp.,* 56 B.R. 910, 913 (Bankr.S.D.N.Y.1986). Pursuant to Fed.R.Bankr.P. 9024, the presence of the considerations set forth in Fed. R.Civ.P. 60(b) would constitute sufficient cause or equities to render it appropriate for a bankruptcy court to reconsider a decision allowing or disallowing a proof of claim. *In re Motor Freight Express,* 91 B.R. 705, 710 (Bankr.E.D.Pa.1988).

American Drug bases its motion on two grounds: (1) the timely filed administrative expense request relates back under Fed. R.Civ.P. 15 as incorporated by Fed. R.Bankr.P. 7015; or (2) excusable neglect under Fed.R.Civ.P. 60(b)(1) applies to regard the proof of claim as timely filed.

■ Fed.R.Civ.P. 15(c) deals with the relation back of amendments of pleadings. A creditor may amend a claim if it meets Rule 15(c)'s standard of arising out of a timely filed claim's "conduct, transaction or occurrence." *In re Unroe,* 937 F.2d 346, 349 (7th Cir.1991). Here, the claims bar date was May 21, 1993. American Drug filed its proof of claim asserting a general unsecured nonpriority claim on March 17, 1994. American Drug subsequently filed its request for payment of an administrative expense on August 23, 1994. There is no timely-filed general unsecured claim to which a subsequent claim filed by American Drug can relate back, therefore, Rule 15(c) is inapplicable.

■ Regarding the second ground advanced by American Drug, "[m]ere neglect is clearly insufficient cause for reconsideration." *Motor Freight,* 91 B.R. at 711. American Drug argues that "the reason for the initial untimeliness was inadvertence on [its] part," however, American Drug has failed to present any evidence to support its contention of "inadvertence" or "excusable neglect" under Rule 60(b)(1). *See Pioneer Inv. Serv. Co. v. Brunswick Assoc.,* —— U.S. ——, ——, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993);

*Motor Freight,* 91 B.R. at 711. Finally, Rule 3008 "is not a license to 'rehash ... original objections to the claims.'" *Motor Freight,* 91 B.R. at 711 (quoting *In re Colley,* 814 F.2d 1008, 1011 (5th Cir.1987)). At the hearing held August 24, 1994, American Drug agreed that if the claim arose prepetition, it had been filed late and stated that it had no problem with the Court denying it as a late-filed claim. American Drug cannot now attempt to "rehash" the issue by asserting inadvertence or excusable neglect.

The Court denies the motion for reconsideration.

## CONCLUSION

Based on the above discussion, Food Barn's objection to American Drug's request for payment of an administrative expense is SUSTAINED. American Drug's request for payment is DENIED. American Drug's motion for reconsideration of the Court's disallowance of its untimely filed general unsecured claim is DENIED.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.