In re Barbara J. NAUGHTON, Debtor.

QUAIL RIDGE INVESTMENTS,
INC., Plaintiff,

v.

Barbara J. NAUGHTON, Defendant.

Bankruptcy No. 96–50079–SJ.
Adversary No. 98–5011–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Nov. 10, 1998.

Douglas M. Weems, Spencer, Fane, Britt & Browne, Kansas City, MO, for Plaintiff.

Bruce E. Strauss, Merrick, Baker, Fox, Hufft & Strauss, Kansas City, MO, for Defendant.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff Quail Ridge Investments, Inc. ("Quail Ridge"), filed its Petition for Specific Performance and For Damages in the Circuit Court of Clinton County, Missouri on March 25, 1998. Debtor–Defendant Barbara Naughton filed a Notice of Removal to this Court on March 30, 1998. Concurrent with the removal notice, Ms. Naughton filed a Motion to Sell Real Property Free and Clear of the Claims of Quail Ridge Investments, Inc. and Deposit Proceeds of Sale into Escrow Pending Adjudication of Those Claims. A hearing was held on the motion to sell real property on April 2, 1998. At the hearing, counsel for Quail Ridge agreed to the sale of real property and agreed to remove the lis pendens filed against said real property. Quail Ridge also agreed to waive any rights

to specific performance and to file a claim for administrative expenses in the approximate amount of $46,000 in this Chapter 11 bankruptcy case. Quail Ridge retained, however, its right to pursue Ms. Naughton in her personal capacity. A hearing was held on Quail Ridge's claim for administrative expenses and, alternatively, its cause of action against Ms. Naughton individually on October 5, 1998. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (1) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a) and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Quail Ridge does not have an administrative expense claim against the bankruptcy estate. I also find that Quail Ridge is entitled to a judgment against Ms. Naughton in the amount of $15,000.

## FACTUAL BACKGROUND

Barbara Naughton inherited a farm that she subsequently elected to subdivide and develop as a residential community. Phase I of that project was completed prior to the filing of the bankruptcy petition on February 14, 1996. Her Chapter 11 Plan of Reorganization (the Plan) was confirmed on November 22, 1996.[1] The Plan provided that Ms. Naughton would sell or refinance Phase III of the development. The Order confirming the Plan provides that Ms. Naughton is required to "obtain approval of the Bankruptcy Court for any post-confirmation borrowing."[2]

Benjamin Culpepper, the owner of Quail Ridge, makes two separate administrative expense claims against the estate. Both claims are for funds he allegedly loaned to Ms. Naughton post-petition and post-confirmation. The first claim is for $15,000. After the Plan was confirmed, Ms. Naughton advertised in the Kansas City Star for investors in Phase III of the project. Mr. Culpepper

responded to the advertisement. Mr. Culpepper testified that he has been in the business of real estate investing for four years. He first met with Ms. Naughton in May of 1997. At that time, she told him that she was in bankruptcy and that she had no money. She also told him that the owners of homes in Phase I were threatening legal action against her if she did not provide adequate water hook-ups to the homes already built. Ms. Naughton believed that if the homeowners took legal action, she would be prevented from developing Phase III. Mr. Culpepper stated he gave Ms. Naughton $15,000 in exchange for an option to buy 20 acres in Phase III for the sum of $65,000. Ms. Naughton believed that to be the fair market value of 20 acres after she obtained the necessary planning and zoning approvals for development. Ms. Naughton used approximately $10,000 of the money advanced by Mr. Culpepper to pay contractors for the Phase I water hook-ups. She used approximately $3,000.00 to make loan payments or to pay for maintenance on vehicles she owned. The balance of the $15,000.00 was used to pay her personal expenses.

Quail Ridge also claims the sum of approximately $30, 000 as an administrative expense. Mr. Culpepper entered into an agreement with Ms. Naughton on August 1, 1997, whereby Quail Ridge agreed to loan up to $30,000 to assist Ms. Naughton in securing financing from Kennedy Funding Corporation (Kennedy).[3] The agreement was revised on August 7, 1997, to provide for funds not to exceed $33,000 to obtain the same financing from Kennedy.[4] Ms. Naughton was seeking a loan of $3.3 million to finance development of Phase III. She was unable to obtain such a loan from a bank or other conventional lender, therefore, she contacted Kennedy. By letter dated August 23, 1997, Kennedy acknowledged that it had received a $10,000 fee for the preparation of the commitment, and that it was willing to make a loan commitment of $3.3 million, provided it received

---

1. Doc. # 147.

2. *Id.* at ¶ 14(f), page 7.

3. Pl.Ex. # 29.

4. Pl.Ex. # 32.

a commitment fee of $20,000 in advance.[5] However, the loan commitment from Kennedy was contingent on its subsequent appraisal of the quick-sale value of the real estate. Based on that appraisal, Kennedy notified Ms. Naughton on September 5, 1997, that it was prepared to lend her $2,000,000, not $3,300,000.[6] Since the $2,000,000.00 was insufficient to satisfy the claims in the bankruptcy case and have any funds remain to develop the land, Ms. Naughton rejected the proposal, and the loan never closed. Because Ms. Naughton did not accept Kennedy's offer to loan her $2,000,000, Kennedy refused to return the commitment fee Quail Ridge had paid on her behalf.

Quail Ridge now claims that its claims for $15,000 and $30,000 are an administrative expense of the estate pursuant to 11 U.S.C. 503(b)(1)(A). Alternatively, Quail Ridge asks for judgment in the amount of $45,000 against Ms. Naughton personally.

I will discuss first whether the two loans are an administrative expense of this bankruptcy estate.

### DISCUSSION

■ Section 503 of the Bankruptcy Code (the Code) affords administrative expense priority to an expense incurred for the preservation or benefit of the bankruptcy estate:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.[7]

However, "since an administrative expense constitutes a priority claim any recovery must be subject to strict scrutiny by the court."[8] To that end, the Plan required Ms.

Naughton to obtain the approval of this Court before incurring any loans on behalf of the estate. She did not do so, therefore, I find that the loans were not incurred on behalf of the estate. Moreover, Quail Ridge must prove by a preponderance of the evidence that any funds it expended on behalf of Ms. Naughton conferred a direct benefit on the estate.[9] The Plan had been confirmed at the time of the transactions at issue here.

As to the $15,000 loan by Quail Ridge, the water hook-ups in Phase I had no connection to the bankruptcy estate. Ms. Naughton had sold the acreage that made up Phase I before she filed her bankruptcy petition. The Plan made no provision for the water hookups. While the portion of the $15,000 used to pay the contractor for the water hook-ups and to pay Ms. Naughton's personal expenses benefitted Ms. Naughton, the estate derived no benefit from those funds. As to the portion of the $15,000 used to make payments on automobiles that were an asset of the estate, there was no documentation that the proceeds were used for such. And, Quail Ridge could have secured that part of the loan with permission of this Court. Without some direct evidence that part of the funds were used to preserve assets of the estate, the request for administrative expense priority for the loan of $15,000 to Ms. Naughton must fail. However, there is no dispute that the loan was made to Ms. Naughton post-petition, post-confirmation, and without Order of the Court. As such, Ms. Naughton is personally liable for this sum, and judgment will be entered against her for that amount.

As to the loan of $30,000 to obtain financing for Phase III, this Court did not approve the loan as required by the Plan. And, the estate derived no benefit from the loan.

■ Additionally, the Revised Letter of Agreement dated August 7, 1997 provides: If the loan is not approved by Kennedy Funding, corp., [sic] Barbara Naughton assumes no liability for repayment. If Kennedy. Funding, Corp. approves the loan

---

5. Pl.Ex. # 38. I note that the commitment letter provides for a $20,000.00 commitment fee and a $10,000 fee for the preparation of the commitment.

6. Pl.Ex. # 46.

7. 11 U.S.C. § 503(b)(1)(A).

8. *In re Food Barn Stores, Inc.*, 175 B.R. 723, 726 (Bankr.W.D.Mo.1994).

9. *Id.*

and Barbara J. Naughton refuses to close, she will be held personally liable for repayment to Quail Ridge Investments, Inc.[10]

Mr. Culpepper argues that Kennedy did approve a loan and Ms. Naughton refused to close, therefore, she, and the bankruptcy estate are liable for the loan. I disagree. The only reason Ms. Naughton entered into loan negotiations with Kennedy was because she believed it would loan her a sum sufficient to pay all of the claims in her bankruptcy case, and still provide funds for the development of Phase III. Any sum short of that goal served no purpose whatsoever, and only delayed the implementation of her confirmed Plan. Ms. Naughton made that very clear to Kennedy in the proposal prepared on her behalf by Tina Feldheim of HTF Enterprises Inc.[11] Thus, "the loan" referred to in the Revised Letter of Agreement was a loan of $3,300,000. Kennedy did not approve that loan, therefore, Ms. Naughton is not responsible for the repayment of the fee paid to Kennedy on her behalf by Quail Ridge. Thus, Quail Ridge has no claim against Ms. Naughton for the $30,000. If Quail Ridge has no claim against Ms. Naughton, it has no claim against her bankruptcy estate. Quail Ridge's claim for administrative expense priority, therefore, will be denied as to the loan for $30,000, and judgment will be entered in favor of Barbara Naughton as to Quail Ridge's request for judgment against Ms. Naughton personally for liability for the $30,000 loan.

In summary, I find that the two loans executed by Quail Ridge to or on behalf of Barbara Naughton are not entitled to administrative expense priority. I also find that Barbara Naughton has no personal liability as to a payment of $30,000 made on behalf of Ms. Naughton to Kennedy Funding Corp. I further find that Ms. Naughton is personally liable for a post-confirmation loan in the amount of $15,000 made to Ms. Naughton.

Orders in accordance with this Memorandum Opinion will be entered this date.